This is a child support arrearage case.
The divorce judgment of September 4, 1973, incorporated therein an agreement of the parties. Thereunder, the father was to pay $150 every two weeks as child support for the five minor children of the parties. Their custody was granted to the mother.
In April 1985, the mother filed the present proceedings whereby she sought to have the father held in contempt of court for his failure to make all of the child support payments as required by the 1973 divorce judgment. She also requested a modification of the original judgment so as to increase the child support payments for James, who was their only child who had not reached adulthood. The father's answer denied almost all of the allegations of the mother, and he sought modification of the original divorce judgment. He averred that all except one of the children had been self-supporting for several years, that all except two of the children were married and that only one of their number was still a minor.
After an ore tenus trial before it, the circuit court ascertained that the father had unilaterally reduced child support payments and that he was in arrears in the amount of $15,795 under the original 1973 judgment. The trial court adjudged the father to be in contempt of court for his failure to make the required child support payments, awarded the mother a judgment against the father for $15,795 and authorized the father to purge himself of contempt by making certain periodic payments. The father was further ordered to pay $150 each month for the support of James. That 1985 judgment was the only modification of the original 1973 judgment that had ever been made by the trial court. After his motion for reconsideration was overruled, the father timely appealed.
Through his most able counsel, the father admits that the trial court's finding that the father unilaterally reduced child support payments was supported by the evidence, but he strenuously argues that, under the circumstances of the case, the trial court abused its discretion and unjustly enriched the mother by the entry of the final judgment.
In viewing the evidence in accordance with the applicable presumptions, the following is pertinently revealed:
The oldest child is Deborah, who was born in November 1958. She graduated from high school during May 1977, whereupon the father reduced his child support payments by one-fifth, which amounted to a $30 deduction every two weeks. Deborah continued to live at home with her mother until she married in 1978. She had worked during and after high school, but she did not pay the mother for living at home. No further support for Deborah was provided by the mother or by the father after her marriage.
Robert was born in September 1960. He finished high school in May 1980, and the father then reduced the child support payments by one-fifth, or $30 per two weeks. Robert lived at home until November 1984, but he did stay with his grandmother for about six months during her terminal illness. During that period the mother furnished groceries for the grandmother and Robert.
Sandra was born in January 1964. She was married during July 1981. The father reduced the child support by one-fifth, or $30 per two weeks commencing in March 1981, when she stayed with him for about three months. She had worked as a waitress since December 1979, except for about six months when she caught up with her schooling. Sandra contributed no definite *Page 661 
amounts, but sometimes gave as much as $50 to $60 of her weekly check to her mother, and Sandra used the rest for her school expenses and clothing. At the time of those payments, there were four children living at home and her stepfather was dying of cancer. She has not looked to either of her parents for any support since her marriage in July 1981.
Thomas was born in May 1966. The father reduced the child support payments by one-fifth, or $30 per two weeks in August 1983, when Thomas went to stay with his father for about four months. He also stayed with his sister for about three months before moving back home to his mother's. While he was with his sister, his father paid the sister $30 every two weeks for his support. Thomas has worked full time since May 1984 and was married in July 1984.
James, the youngest child, was born in 1968 and was seventeen years of age at the time of the trial. At all times since the divorce of his parents, James has lived with his mother.
The mother testified that all of the reductions which the father made in child support were done over her objection and that each time the father reduced his child support, an argument between them would result. The father gave no support other than the reduced child support payments, except for $40 for the repair of a pair of glasses. The total amount of support paid by the father was $15,795 less than what was required by the original 1973 divorce judgment.
The father relies strongly upon Nabors v. Nabors,354 So.2d 277 (Ala.Civ.App. 1978), where it was stated that a father is given credit for those periods of time when the father supports a child or when the child is self-supporting. He contends thatNabors dictates a reversal of this case. We disagree.
The grant or refusal of a credit lies within the sound discretion of the trial court, and such determination will not be reversed unless there was an abuse of discretion. Kinsey v.Kinsey, 425 So.2d 483 (Ala.Civ.App. 1983); McDaniel v.McDaniel, 412 So.2d 282 (Ala.Civ.App. 1982). While a marriage or the becoming of age of a child is each an event which may be considered for child support modification, neither automatically modifies a child support judgment. Smith v.Smith, 443 So.2d 43 (Ala.Civ.App. 1983); Weaver v. Weaver,401 So.2d 77 (Ala.Civ.App.), cert. denied, 401 So.2d 78 (Ala. 1981). Since the divorce judgment as to support did not provide for a reduction of any amount when each child married, reached majority or became self-supporting, the father had no authority to make the four unilateral reductions in the amount of his child support payments, and such unilateral reductions can be considered as to whether credits should or should not be granted. Smith, 443 So.2d at 45; Owens v. Owens, 412 So.2d 820
(Ala.Civ.App. 1982); McDaniel, 412 So.2d at 283. A trial court does not abuse its discretion in denying a credit to a father for a relatively brief time that the child lived with and was supported by the father. Smith, 443 So.2d at 46; Marsh v.Marsh, 426 So.2d 847 (Ala.Civ.App. 1983).
We have carefully studied the record in this case and the helpful briefs of counsel. After a thorough review of the authorities, we are not satisfied that any abuse of the trial court's discretion occurred. To alter the judgment as to the arrearage awarded would be an unauthorized substitution of our judgment for that of the trial court. While the evidence was such that the trial court, in its discretion, could have either granted or denied credits against the arrearage, the trial court refused to give the father credit under the circumstances of this case. Such a decision was within the trial court's judicial discretion. The trial court was open to the father to request a reduction in support because of the marriage, the attaining of majority or the self-support insofar as each of the four oldest children is concerned, but he took no such action until the mother attempted to force him to comply with the divorce judgment. We cannot say that the order that the father pay the child support *Page 662 
arrearage by installments to the mother is unjust. In short we see no unjust enrichment to the mother.
We deem that the controlling issues, arguments and questions have been answered. The final judgment fell within the perimeter of the law and it is affirmed.
The foregoing opinion was prepared by retired Circuit Judge EDWARD N. SCRUGGS, serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama 1975, and this opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur.