603 So.2d 1082 (1992)
Ellis C. ALRED
v.
STATE of Alabama, ex rel. Marjorie Alred HILL.
2910187.
Court of Civil Appeals of Alabama.
August 14, 1992.
*1083 W.H. Rogers, Moulton, for appellant.
William Prendergast and Lois Brasfield, Asst. Attys. Gen., for appellee.
THIGPEN, Judge.
This is a child support arrearage case.
In November 1978, Marjorie Alred Hill (mother) and Ellis Alred (father) were divorced in Lawrence County, Alabama. Custody of their four children was awarded to the mother. The trial court ordered that the father was to "pay unto the Clerk of the Court, the sum of FIFTY AND NO/100 DOLLARS ($50.00) per week for the support and maintenance of the minor children of the parties to this cause."
In February 1980, the Circuit Court of Lawrence County ordered that the father was in contempt for failing to pay his child support, and it determined that the father was $2,650 in arrears. The trial court then acknowledged that the father had recently paid $1,000 to the clerk's office toward such arrearage, and that the father represented to the trial court that he would be current within one month. The trial court extended the deadline for the father to pay the balance of $1,650, and the trial court further ordered the father to maintain regular payments as originally ordered.
In 1990, the State of Alabama (State), on behalf of the mother, filed a contempt petition alleging that the father was $30,100 in arrears. The State also filed an affidavit from the Circuit Clerk of Lawrence County verifying the original order and the delinquent child support amount of $30,100. The father denied any arrearage, claiming that he had fulfilled his child support obligations by making payments directly to the mother.
Following an ore tenus proceeding, the trial court entered an order finding the father in contempt of court for failing to pay all of his child support payments, for failing to make such payments through the clerk's office, and for willfully and voluntarily ceasing to make payments when the youngest child reached 18 years of age on or about June 19, 1990. The trial court's order also stated the following as to the amount of arrearage:
"From the voluminous records of payments the Court finds that the [father] has paid 83% of what he should have paid up until he quit paying in June of 1990, and that the [father] owes $1,650.00 from the adjudication of this Court on February 6, 1980 and $50.00 per month from January of 1980 through June of 1990, and that he should be credited with payments in the amount of $20,280.00 against said amount which should have been paid of $28,950.00, leaving an arrearage of $8,670.00 owed by the [father] to the [mother]."
The father filed a motion to alter, amend or vacate the trial court's judgment, but this motion was denied by operation of law pursuant to Rule 59.1, Alabama Rules of Civil Procedure. The father then appealed.
We first note that, after an ore tenus proceeding, the trial court's judgment is presumed correct and will be set aside only when it is determined that it is plainly and palpably wrong. Boley v. Boley, 589 So.2d 1297 (Ala.Civ.App.1991).
First, the father contends that the trial court's order is based on numerous mathematical flaws constituting reversible error. Specifically, the father argues that the trial court miscalculated the amount of child support payments made by the father to the mother by checks, and that the trial court failed to credit the father for cash payments made to the mother.
The award or denial of a credit against child support is within the trial court's sound discretion and will not be reversed unless there is plain and palpable abuse. Phillippi v. State ex rel. Burke, 589 So.2d 1303 (Ala.Civ.App.1991). Furthermore, a party seeking credits against such arrearage must present proof as to *1084 the monetary amount of the credits sought. Phillippi, supra.
Although the divorce judgment ordered the father to make his child support payments through the clerk's office, the record revealed that, since the ordering of such support in 1978, the father only made one payment in this manner.
At trial, the father presented several checks to obtain credit toward his arrearage. The record revealed, however, that the father never presented a total of his alleged payments by check, although the trial court and the State requested such total on different occasions. The State alluded that the trial court could have found that some of these checks were duplicates, or that they were written for reasons other than child support.
Although the father also argued that the trial court failed to give credit to him for cash payments that he alleged he made to the mother, the record revealed that he again failed to present the trial court with any proof regarding the amount of credit which he sought. The father first testified that he paid the mother "a lot of cash," but he admitted that he had no receipts for any of these payments. He later testified that he did not know the amount of the cash payments he made to the mother, but "it would be a thousand dollars." The mother testified that the amount of cash paid to her by the father was "very little."
The trial court's order credited the father with payments totalling $20,280 after considering the checks presented by the father, and the mother's testimony concerning the cash payments that she received. With the attendant presumptions in mind, we cannot say that the trial court's judgment is plainly and palpably wrong.
In his next issue, the father contends that the trial court committed reversible error by allowing the $1,650 arrearage found in the 1980 contempt order to be added to any subsequent alleged arrearage. The father bases his argument on Ala.Code 1975, § 6-9-191, which states that "[i]f 10 years have elapsed from the entry of the judgment without issue of execution or if 10 years have elapsed since the date of the last execution issued, the judgment must be presumed satisfied, and the burden of proving it not satisfied is upon the plaintiff."
In his brief, the father argued that he paid $500 towards the $1,650 arrearage, that the mother did not offer evidence to refute this payment, and that 10 years had elapsed since the execution of the 1980 contempt order. The father argued, therefore, that the trial court erred by issuing no credit for that payment.
The State argues that the trial court, in fact, may have given the father credit for this payment, and also argues that the trial court could have found that the mother overcame the presumption of satisfaction found in Ala.Code 1975, § 6-9-191. We agree.
As stated earlier, the trial court credited the father with over $20,000 toward his arrearage. Certainly, the alleged $500 payment may have been a part of such credit. Furthermore, in Solinger v. Solinger, 327 So.2d 721 (Ala.Civ.App.1975), this court considered whether a party seeking child support arrearage had overcome the presumption of satisfaction found in the predecessor to Ala.Code 1975, § 6-9-191. In holding that the party seeking the arrearage had rebutted the presumption, Solinger at 723 stated:
"The only other evidence in the record on the question of satisfaction is the ledger sheet from the Register in Chancery. This ledger runs on for several pages showing line-by-line entries of alimony installment payments paid into the registry by the deceased. There are no entries subsequent to May 27, 1952. This document, admitted without objection, is prima facie evidence that the Register received no payments after that date. The decree of divorce expressly orders that installments `be paid to the Register of the Circuit Court,' a provision which remains unmodified. The uncontradicted Register's ledger shows that payments in the prescribed manner ceased in 1952."
*1085 Here, the 1980 contempt order credited the father with a $1,000 payment, leaving a $1,650 arrearage at that time. Since no other payments were made directly to the clerk's office, the trial court could have held that the mother overcame the presumption of satisfaction regarding the father's alleged $500 payment.
Third, the father argues that the trial court committed reversible error by failing to acknowledge that the inclusion of the words "minor children" in the original judgment's support clause constituted express intent that the support be discontinued when the minor children reached majority. Specifically, the father contends that the words "minor children" are a term of art fixing child support payments only until majority when the payments were to be automatically discontinued. We disagree and find Hamilton v. Phillips, 494 So.2d 659 (Ala.Civ.App.1986), which was cited by the father in his brief, to be dispositive as to this issue.
In Hamilton, supra, the father, in defending against a contempt petition alleging child support arrearage, averred that his children had been self-supporting for several years, except for one child, who was still a minor. After finding that the father unilaterally reduced child support payments, the trial court assessed an arrearage against him. The father appealed, arguing that the mother would be unjustly enriched by collecting an arrearage for children who had become self-supporting or had reached majority. In affirming the decision of the trial court, we stated that "[w]hile a marriage or the becoming of age of a child is each an event which may be considered for child support modification, neither automatically modifies a child support judgment." Hamilton at 661.
Consequently, the trial court did not commit reversible error by failing to allow for automatic discontinuance of the father's child support payments upon the parties' children reaching majority status. We hasten to add, however, that this case differs from a situation in which an order designates that a specific dollar amount of child support be paid for each of the parties' minor children. In such a case, the "marriage or becoming of age of any one of the children" would be such an event which would entitle a parent to terminate support for such child pursuant to such order.
Finally, the father argues that the failure of majority status, marriage, or self-support to automatically modify child support creates a discriminatory effect in favor of majority children under Ala.Code 1975, § 26-1-1. The father contends that the law of Alabama (as enunciated in Hamilton, supra) discriminates against the payor of such child support and unjustly benefits the payee. We note, however, that the father failed to raise this issue at the trial level and, therefore, we cannot consider it on appeal. Gotlieb v. Collat, 567 So.2d 1302 (Ala.1990).
Based on the foregoing, we cannot say that the trial court's judgment is plainly and palpably wrong. Boley, supra. Accordingly, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
RUSSELL, J., concurs.
ROBERTSON, P.J., concurs specially.
ROBERTSON, Presiding Judge, concurring specially.
I feel it necessary to revisit this court's holding in Hamilton v. Phillips, 494 So.2d 659 (Ala.Civ.App.1986), from which the majority quoted that "[w]hile a marriage or the becoming of age of a child is each an event which may be considered for child support modification, neither automatically modifies a child support judgment." This is not a true statement of the law generally, only in a Hamilton type situation.
In Hamilton the divorce judgment provided that the father was to pay $150 every two weeks as child support for five minor children without any designation as to how much, if any, was allocated to each child, or per child. In other words, as in this case, the support order did not provide for the payment of $30 per child every two weeks for the five minor children. Therefore, the "marriage or the becoming of age" of any *1086 one of the five minor children in Hamilton did not automatically modify the child support payment. Instead, such an event could have been considered in a modification proceeding to reduce the "$150 every two weeks" child support obligation.
What the father apparently fails to recognize in this case is that there is a difference between a support order that requires the payment of $50 per week for the support of four minor children and a support order that requires the payment of $12.50 per week per child for four minor children. While initially both orders amount to $50 per week, the latter would automatically be reduced by $12.50 per week as each child reaches the age of majority, whereas, the first order remains $50 per week until the youngest child reaches majority or is otherwise modified. Hamilton.