T.C. Summary Opinion 2009-176

UNITED STATES TAX COURT

DAVID W. BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4887-08S.                    Filed November 25, 2009.

David W. Brown, pro se.

<u>Marshall R. Jones</u>, for respondent.

MORRISON, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code, as in effect when the petition was filed.[1]  Under section 7463(b), the decision to be entered is not reviewable by any other court, and

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code).

this opinion shall not be treated as precedent for any other case.

Petitioner David W. Brown (Brown) seeks review under section 6330(d) of the IRS's determination rejecting Brown's proposal to pay his unpaid tax liabilities for the tax years 2001 through 2004 in installments of $250 per month. The issue for decision is whether the IRS abused its discretion by refusing to consider Brown's child-support obligation for one of his children in evaluating Brown's proposal.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated in this opinion by this reference. Brown resided in Alabama at the time he filed his petition.

Brown and his wife (the Browns) divorced in 1999. They had two children. The divorce decree was entered by the circuit court of Morgan County, Alabama, as part of a settlement between Brown and his wife. The settlement consisted not only of the Browns' consent to the divorce decree but also of a divorce agreement. This agreement contained the following child-support provision, requiring Brown to pay child support of $51.93 per child per week (which is equal to $225 per child per month) until "any child's arrival at the age of majority":

> Subject to the approval of the Court, Husband shall pay to Wife through the Office of the Register of the

Circuit Court, Morgan County, Alabama, for support and maintenance of the minor children the sum of Fifty-One Dollars and Ninety Three Cents ($51.93) per child per week, until the first to occur of any of the following events: (1) death of any child or Husband; (2) marriage of any child; (3) any child's becoming self-supporting; or (4) any child's arrival at the age of majority.

The dates of birth of Brown's children are listed in the agreement. From these dates we conclude that the two children were aged 8 and 13 at the time of the divorce agreement. We can also conclude that Brown's younger child turned 19 on February 17, 2009, and his older child turned 19 on July 6, 2004. The age of majority in Alabama is 19, as discussed below.

As part of the divorce decree, the state court entered an order requiring Brown's employers to withhold child-support payments from his wages and transmit the withholdings to the Alabama Child Support Payment Center for payment of child support. This withholding order was not immediately effective. Instead, the decree provided that the order "shall not be served on the employer of * * * [Brown] and shall not take effect until * * * [Brown] shall become delinquent in a dollar amount equal to one month of child support payments".

The IRS alleges that Brown failed to file timely tax returns for 2001 through 2004.[2] Apparently, Brown made child-support

---

[2]The IRS requested in its brief that this Court find as a fact that Brown failed to file timely tax returns for 2001 through 2004. However, we are not able to confirm from the
(continued...)

payments of $450 per month ($225 per child) until his older son's 19th birthday in 2004. Even after his son turned 19, Brown continued to make the full $450 payment each month. These $450 payments continued until at least until January 2008.

On July 25, 2007, the IRS filed a notice of Federal tax lien against Brown regarding his unpaid tax liabilities for the tax years 2001 through 2004.[3] On July 26, 2007, the IRS sent Brown a letter notifying him that the IRS had filed the lien and advising him that he had a right to a collection hearing under section 6320. Brown requested such a hearing. Brown's case was assigned to Darlene Caputo, an Appeals officer (the Appeals officer) at the IRS Branch Office in Memphis, Tennessee.

---

[2](...continued)
Exhibit 5-J referenced in the brief that the statement is true. Thus, we do not find the statement above as a fact as we do the other facts contained in the background section of this opinion.

[3]The notice of Federal tax lien alleges that Brown owed $8,278.51 for 2001, $9,267.27 for 2002, $8,528.57 for 2003, and $8,034.42 for 2004, or $34,108.77 in total. These amounts include interest on Brown's unpaid tax liabilities, as well as the failure-to-pay penalty. This failure-to-pay penalty accrues every month at the rate of 0.5 percent of the underpayment per month. Sec. 6651(a)(2). The penalty will accrue every month for 50 months if the tax remains unpaid. After the filing of the notice of Federal tax lien, the underpayment interest and the failure-to-pay penalty continued to accrue. On the basis of other parts of the record, we can discern the amounts of underpayment interest and the failure-to-pay penalty which accrued from the date of the notice until Jan. 17, 2008. These amounts are $1,220.55 for 2001, $1,724.20 for 2002, $1,957.27 for 2003, and $2,428.80 for 2004, resulting in a total additional liability of $7,330.82.

Brown mailed various documents containing evidence of his income and expenses to Caputo. These documents included IRS Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On January 8, 2008, a telephone conversation took place between Brown and the Appeals officer. The Appeals officer generally explained two of the collection alternatives described in section 6330: (1) an installment agreement, by which the taxpayer pays the entire tax liability over time by making monthly payments, and (2) an offer-in-compromise, under which the IRS forgives a portion of the tax debt. See sec. 6330(c)(2)(A)(iii). According to the case activity record written by the Appeals officer, the only collection alternative she and Brown discussed in detail was the possibility of an installment agreement covering the tax years 2001-04. Brown did not dispute the underlying tax liabilities nor did he dispute that the notice of Federal tax Lien was filed or whether it should have been filed. His sole contention was that he could afford an installment payment of only $250 per month because of his monthly expenses, expenses that he claimed included $450 per month in child-support payments for his two children. By contrast, the Appeals officer told Brown he could afford $700 per month because she determined that Brown no longer had any legal obligation to make child-support payments for his two children.

The record does not reflect whether either party's respective proposal at the hearing ever detailed the duration of a proposed installment plan or how many monthly payments Brown was to make.[4]

After the January 8 telephone conversation, Brown submitted to the Appeals officer a letter signed by his ex-wife stating that Brown "is at this time, January [9, 2008,] current with child support payments in the amount of $450 dollars per month."[5] He had told the Appeals officer that he paid some of the child-support payments by check to his wife and that the other part he paid by cash directly to his children. Brown also sent to the Appeals officer a copy of the final divorce decree, attached to which was the divorce agreement.

After the January 8 telephone conversation, the Appeals officer conducted research on the Web site Google.com and concluded that the age of "majority for child support is 18 yrs [sic] of age." Therefore she would "not allow for child support, which [would] increase monthly disposable income to $700.00 a

---

[4]However, it is clear that because Brown's assessed and accrued tax liability exceeds $40,000, see supra note 3, the installment plan had to stretch over several years. The Appeals officer also mentioned in the case activity record that Brown "would have to make at least $600.00 a month payments to full pay bal due [sic]."

[5]It should be noted that Brown had a legal obligation to make child-support payments only for his younger child when his ex-wife wrote the letter in January 2008. This is true whether the age of majority for Brown's younger child was 18 or 19, as he turned 19 over a year later on Feb. 17, 2009.

month."  According to the case activity record, the Appeals
officer decided on January 18, 2008, to sustain the notice of tax
lien.  She sent a written determination to Brown on January 25, a
determination that we describe further below.  At trial Brown
claimed that he was in fact able to speak with the Appeals
officer at some point during January 2008 when, he says, the
Appeals officer purportedly called him with news of the final
determination.[6]  During the call, he allegedly explained to her
that the age of majority in the state of Alabama was 19, not 18.
According to Brown, neither party to this subsequent conversation
discussed a monthly installment payment amount greater than the
$250 Brown initially proposed but less than the $700 figure the
Appeals officer had arrived at.

On January 25, 2008, the IRS sent Brown a Notice of
Determination Concerning Collection Action(s) Under Section 6320
and/or 6330.  The notice stated that the IRS was correct to
assess tax against Brown and to file a tax lien against him and
that he could make full monthly installment payments.  The notice
asserted that the "monthly child support payment for $450.00 was
disallowed because of the ages of your children."  It noted:
"You sent the court documents, which show that you are no longer
required to make child support payments for the older child, age

_____

[6]The Appeals officer states in her notes that she spoke with
Brown only at the CDP hearing on Jan. 8, 2008, and was not able
to reach him after that.

23, and the younger child, age 18 as of February of 2008." This was an apparent reference to the requirement in the divorce agreement of February 11, 1999, that Brown pay child support until his children reached the age of majority.

Brown timely filed a petition with this Court on February 26, 2008, challenging the Appeals officer's determination. In his petition, he claims that "I am still paying child support and will continue to pay child support until Feb. 2009." He also stated: "I am willing to pay a monthly payment but can not afford $700.00/month."

At trial in Birmingham, Alabama, on October 14, 2008, Brown submitted into evidence an order from the Circuit Court of Morgan County, Alabama, that ordered Brown to change the way in which he was to make child-support payments. Attached to this September 22, 2008 order was a separate document entitled "Responsibilities of Individuals Under Child Support Orders". The document stated that

> You must continue to make all payments until the court order is changed. If your child's status changes (turns 19, marries, moves in with a different relative, obtains a full-time job, etc.), you must continue to make the same payments until the court changes the amount you must pay.

It is unclear who wrote the document; it is not signed. The IRS objected to admission of the document into evidence because:

> it's a document dated more than eight months after the date of the hearing. Therefore, it could not possibly have been part of the administrative record when

> Darlene Caputo considered * * * [Brown's] case, and under the statutory scheme and the case law, it's not relevant, and it may not be admissible.

The court took the IRS's objection under advisement.  The IRS did not elaborate further on the issue in its post-trial brief.

Brown's testimony at trial focused on the IRS's failure to consider his child-support payments in determining how much he could pay to the IRS in monthly installments; he submitted no brief.  He conceded that he was liable for all taxes, interest, and penalties due and stated that the sole issue in dispute was the dollar amount of his monthly payment under an installment plan.  He implicitly conceded that he has no child-support obligation for his older child by discussing only his younger child at trial, but he did not directly address the issue of support for his older child at trial.  He stated that his obligation to his younger child would terminate on February 17, 2009, when the child would turn 19.

In its post-trial brief, the IRS conceded that the Appeals officer should have taken into account the amount of child support attributable to Brown's younger child.  It agreed with Brown that the age of majority in Alabama was in fact 19.  The IRS minimized the significance of the error, asserting that the child support of $225 per month should have been subtracted from the monthly amount that Brown could pay to the IRS only until the younger child turned 19 in February 2009, when Brown could pay

the full $700 per month the Appeals officer had determined.  The
IRS argued that Brown's offer of $250 per month, reflecting
support for both children, was too low.  Despite its concession
that the Appeals officer miscalculated the amount Brown could
pay, the IRS nevertheless contended that Appeals officer's
failure to offer $475 per month, an amount consistent with a
correct subtraction for one child's support, was not an abuse of
discretion.  The IRS claimed that no abuse of discretion occurred
because even if the Appeals officer had offered $475 per month,
Brown never indicated he would agree to pay that amount.[7]  The
IRS noted that in the event this Court finds that an abuse of
discretion occurred, it did not object to remand of this case to
the Appeals Office.  Finally, the IRS argued that the notice of
tax lien should not be withdrawn because Brown had not requested
it be withdrawn and none of the conditions in section 6323(j) for
withdrawing the notice of tax lien were satisfied.

## Discussion

When the IRS makes an assessment that a taxpayer owes tax,
the amount of unpaid tax becomes a lien in favor of the United
States against all property belonging to that person.  Sec.
6321.  The IRS can solidify its rights to the property by filing

---

[7]As Brown does not argue that he ever offered $475 per month
before the issuance of the notice of determination, we find as a
factual matter that he never increased his offer from the $250
per month he originally offered at the hearing.

a notice of Federal tax lien with the local government in which the property is located. Sec. 6323(f). The effect of the filing is that the lien has priority over subsequent buyers of the property, holders of security interests in the property, judgment-lien creditors, and mechanics lienholders. Sec. 6323(a). Once the IRS has filed a notice of Federal tax lien with the local government, it is required to notify the taxpayer. Sec. 6320(a)(1). Within 30 days after the expiration of the 5-business-day period for sending the notification, the taxpayer is permitted by section 6320(a)(3)(B) to request an administrative hearing.

There is no entirely independent set of rules that governs how the IRS and the taxpayer are to handle these lien hearings. Rather, section 6320(c) imports the rules that govern similar hearings that the IRS must hold before it can issue a levy.[8] Thus, section 6320(c) provides that "For the purposes of this section, subsections (c), (d) (other than paragraph (2)(B) thereof), (e), and (g) of section 6330 shall apply." Section 6330(c)(2) sets forth what issues can be raised by the taxpayer

---

[8]"The levy enables the Service to gain custody of taxpayer's property whether in the possession of the taxpayer or third parties." Elliott, Federal Tax Collections, Liens and Levies, par. 13.01, at 13-6 (2d ed. 2008). "The * * * levy does not determine whether the government's rights to the seized property are superior to those of other claimants; the levy does, however, protect the government against diversion or loss while such claims are being resolved." Id.

at a levy hearing and therefore, by operation of section 6320(c),
it also governs what issues can be raised by the taxpayer at a
lien hearing.  Section 6330(c)(2) provides:

>      (2)  Issues at Hearing.--
>
>           (A)  In general.--The person may raise at the
>           hearing any relevant issue relating to the
>           unpaid tax or the proposed levy, including--
>
>                (i) appropriate spousal defenses;
>
>                (ii) challenges to the appropriateness
>                of collection actions; and
>
>                (iii) offers of collection alternatives,
>                which may including the posting of a
>                bond, the substitution of other assets,
>                an installment agreement, or an offer-
>                in-compromise.
>
>           (B)  Underlying liability.--The person may
>           also raise at the hearing challenges to the
>           existence or amount of the underlying tax
>           liability for any tax period if the person
>           did not receive any statutory notice of
>           deficiency for such tax liability or did not
>           otherwise have an opportunity to dispute such
>           tax liability.

The duties of the Appeals officer in a levy hearing (and
therefore also a lien hearing) are set forth in section
6330(c)(3).  That provision requires the Appeals officer to make
a "determination", and in making the determination the Appeals

officer must "take into consideration * * * the issues raised under [section 6330(c)(2)]."[9]

Once the Appeals officer has made the determination described above, the Tax Court can review the determination. Sec. 6330(d)(1). In cases involving taxpayers who are not disputing the underlying tax liability, the Court will review the determination of the Appeals officer for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Nicklaus v. Commissioner, 117 T.C. 117, 120 (2001); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). The inquiry hinges on whether the IRS's application of its discretion was "arbitrary, capricious, or without sound basis in fact or law." Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Here we consider the only issue raised by Brown at his lien hearing. Brown argued only that his payment of child support for his two children--at a total rate of $450 per month--should be

---

[9]A "hearing" for purposes of sec. 6320 includes conversations between the IRS and a taxpayer (and exchanges of documents between them) that occurred from the date that the taxpayer requests a hearing until the final determination by the Appeals officer. TTK Mgmt. v. United States, 87 AFTR 2d 2000-350, 2001-1 USTC par. 50,185 (C.D. Cal. 2000); sec. 301.6320-1(d)(2), Q&A-D6, Proced. & Admin. Regs. Therefore, the "hearing" for the purpose of this case includes the conversations between Brown and the Appeals officer (and the documents exchanged between Brown and the Appeals officer) between (1) the date of Brown's request for a hearing, and (2) the date that the Appeals officer made a final determination.

considered a necessary expense that reduces the $700 per month that the Appeals officer determined Brown otherwise had the ability to pay under an installment agreement. Brown conceded that he was liable for all taxes, interest, and penalties assessed against him. He did not challenge the filing of the notice of tax lien itself, and thus he cannot challenge the notice before the Court. Sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Furthermore, Brown does not appear to have any grounds for challenging the filing of the notice of tax lien. The law does not bar the filing of a notice of tax lien as it does the conduct of a levy while an installment agreement is under consideration. Secs. 6321, 6331(k)(2); Hult v. Commissioner, T.C. Memo. 2007-302. Section 6323(j)(1) permits the Secretary to withdraw the filing of a tax lien under certain circumstances, one of which is where the taxpayer has already entered into an installment agreement. But Brown has not yet entered into an installment agreement. None of the other circumstances listed in 6323(j)(1) applies that would allow the IRS to withdraw the filing of the lien.[10] No other statutory

---

[10]Sec. 6323(j)(1) provides in part:

(j) Withdrawal of Notice in Certain Circumstances.--

    (1) In general.--The Secretary may withdraw a notice of a lien filed under this section and this chapter shall be applied as if the withdrawn notice had not been filed, if the Secretary determines that--

(continued...)

grounds exist in this case to defeat the filing of the tax lien. Therefore, the IRS did not abuse its discretion solely by failing to withdraw the filing of the tax lien.

We now turn to Brown's sole contention, that the Appeals officer should have considered his child-support obligations in calculating his monthly installment payments. Brown's 1999 divorce agreement required him to pay child support for his two children of $225 per month per child. Brown claimed at the hearing that he was still required to make payments for both children (at a total of $450 per month), leaving him with only $250 per month to pay to the IRS. The Appeals officer determined that Brown was no longer required to make child-support payments for either child, and therefore he could afford to pay the IRS $700 per month.

---

[10](...continued)
       (A) the filing of such notice was premature or otherwise not in accordance with administrative procedures of the Secretary,

       (B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the lien was imposed by means of installment payments, unless such agreement provides otherwise,

       (C) the withdrawal of such notice will facilitate the collection of the tax liability, or

       (D) with the consent of the taxpayer or the National Taxpayer Advocate, the withdrawal of such notice would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States.

The Internal Revenue Manual (IRM or Manual) contains the IRS's extensive guidelines and procedures for its employees to observe in evaluating proposed installment agreements. 2 Administration, IRM (CCH), pt. 5.15.1.1 to 5.15.1.4, at 17,653-17,658 (May 9, 2008). These procedures do not require the IRS to enter into an installment agreement but merely to consider any proposals of installment payments made by taxpayers. The Manual directs that for the IRS to enter into an installment agreement, "the taxpayer must agree to the maximum monthly payment based upon the taxpayer's ability to pay." Id. pt. 5.14.2.1.1(7), at 17,524 (Sept. 26, 2008). The taxpayer's ability to pay is determined by comparing monthly income to "allowable" expenses. Id. pt. 5.15.1.1 through 5.15.1.36, at 17,653-17,687 (May 9, 2008). Thus, the excess of monthly income over "allowable" expenses is the minimum monthly payment an Appeals officer should accept. See Lites v. Commissioner, T.C. Memo. 2005-206. In determining what is an "allowable" expense, the Manual directs the IRS to include those expenses are "necessary" (more about what is a "necessary" expense below) and also to include some "conditional" expenses, none of which are relevant here.[11] 2

---

[11]"Conditional" expenses are those expenses that do not meet the necessary expense test, but which may be allowable if the tax liability, including projected accruals, can be fully paid within 5 years. Schulman v. Commissioner, T.C. Memo. 2002-129; 2 Administration, IRM (CCH), pt. 5.15.1.7(7), at 17,663 (May 9, 2008). Brown is arguing that his child-support payments for his

(continued...)

Administration, IRM (CCH), pt. 5.15.1.7(1), (7), at 17,662,
17,633 (May 9, 2008).  "[N]ecessary" expenses are defined by the
Manual as those reasonable expenses "that are necessary to
provide for a taxpayer's and his or her family's health and
welfare and/or the production of income."  Id. pt. 5.15.1.7(1),
at 17,662 (May 9, 2008).  Child-support payments are a
"necessary" expense to be considered, but only if they are (1)
court-ordered, (2) reasonable in amount, and (3) actually being
paid.  Id. pt. 5.15.1.10, at 17,667 (May 9, 2008).  Recall that

•A 1999 divorce decree required Brown to pay child-support
of $225 per child per month until the "child's arrival at
the age of majority";

•the age of majority was 19;

•on the date of the hearing (January 8, 2008), one of
Brown's children was 23 years old, which is far older than
the age of majority.  The other child was 18 years old (and
would turn 19 on February 17, 2009);

•Brown was current on his child-support payments on the
hearing date (according to his wife);

•the Appeals officer found that Brown was not required by
court order to make the child-support payments to either
child.

---

[11](...continued)
younger child until the child reached age 19 are a necessary
expense.  He fails to argue that they could be a conditional
expense, and thus we deem Brown to have conceded that they are
not.

The IRS now concedes that the Appeals officer violated the Manual by failing to reduce her estimate of Brown's ability to make monthly payments by his obligation to make $52 weekly payments for the support of his younger son.[12]  Being 18 years old at the time of hearing, the son was still a minor.  See Ala. Code sec. 26-1-1(a) (LexisNexis 1992).[13]  The 1999 agreement required Brown to make payments until, in the words of the agreement, the child's "arrival at the age of majority."  On the basis of this language, one might expect that Brown's obligation to support his younger son was discharged on the day of his son's 19th birthday, which was February 17, 2009.  In his brief, Brown conceded that his obligation to pay child support ended on the day of his son's 19th birthday.  We accept this concession.[14]

---

[12]The IRS concedes this issue in its brief when it states that "the settlement officer should have allowed the disputed $225 per month in calculating the required installment agreement monthly amount for the period ending on the child's 19th birthday."

[13]Alabama is one of a few states that defines the age of majority as 19, not 18.

[14]Our preliminary reading of Alabama child-support law suggests that Brown was no longer required to make child-support payments after his younger son's 19th birthday.  The 1999 divorce agreement required Brown to pay for his "minor children  * * * the sum of * * * $51.93 * * * per child per week * * * until * * * any child's arrival at the age of majority."  This provision seems to say that Brown had no obligation to make child-support payments after the younger child reached 19, "the age of majority."  This theory is supported by some dicta in Alred v. Ala. ex rel. Hill, 603 So. 2d 1082 (Ala. Civ. App. 1992).  Alred concerned a child-support order that required a father to pay $50

(continued...)

A conclusion that the Appeals officer violated the Internal

---

[14](...continued)
per week "'for the support and maintenance of the minor children of the parties'". Id. at 1083. The father contended that the use of the adjective "minor" in the phrase "minor children" suggested that child-support payments were to be automatically discontinued when the children (presumably both children) reached the age of majority. Id. at 1085. The Alabama court rejected the father's argument, holding that "'the becoming of age of a child'" is not an event that "'automatically modifies a child support judgment.'" Id. (quoting Hamilton v. Phillips, 494 So. 2d 659, 661 (Ala. Civ. App. 1986)). However, the court took pains to state that in a case "in which an order designates that a specific dollar amount of child support be paid for *each* of the parties' minor children", i.e., an order like Brown's, the result would be different. Id. at 1085. For an order that specifies a dollar amount for each child, the "'becoming of age of any one of the children' would be such an event which would entitle a parent to terminate support for such child pursuant to such order." Id. This dicta in *Alred* supports the idea that Brown's obligation to support his younger child automatically terminated when that child turned 19.

At trial, however, Brown introduced into evidence a document that, on its face, seems to indicate that his child-support obligations do not automatically terminate. The document was an unsigned attachment to a 2008 court order that directed Brown to make future child-support payments to the Alabama Child Support Payment Center in Montgomery, Alabama. The unsigned document was entitled "Responsibilities of Individuals Under Child Support Orders." This document stated: "You must continue to make all payments until the court order is changed." It stated further: "If your child's status changes (turns 19, marries, moved in with a different relative, obtains a full-time job, etc.), you must continue to make the same payments until the court changes the amount you must pay." This unsigned document seems to indicate that Brown was not entitled to automatically stop making payments upon his son turning 19 years old. It is unclear what weight, if any, we should accord to the views of the unnamed authors of this document. But because Brown has conceded that his child-support obligation ceased upon his younger son's 19th birthday, we need not consider the weight to be placed on this document. For the same reason, we need not rule on the IRS's objection to admission of the 2008 court order and the unsigned document (which was that it was not reviewed by the Appeals officer).

Revenue Manual would not end this matter.  The duty of the Appeals officer was to consider the issues raised by Brown, including "offers of collection alternatives, which may include * * * an installment agreement".  See sec. 6330(c)(2)(A).  Brown offered to make monthly installments of $250 per month.  This was the "offer" of a "collection alternative".  The Appeals officer rejected this offer because she thought Brown could pay $700 per month.

Although the Appeals officer made an error, the error did not change the result of the hearing.  Even if the Appeals officer had determined that Brown could pay $475 per month, it would not have been an abuse of discretion for the Appeals officer to reject Brown's offer as insufficient.[15]  In considering other such harmless errors, this Court has declined to remand the case to the Appeals officer.

For example, in Lindley v. Commissioner, T.C. Memo. 2006-229, affd. sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009), the taxpayers submitted an offer-in-compromise of $150,000.  The Appeals officer determined that the taxpayers

---

[15]For example, in Joseph v. Commissioner, T.C. Memo. 2006-20, the taxpayer proposed to be allowed to pay his tax liability in monthly installments of $700.  The taxpayer submitted a collection statement showing that he had almost $1,400 of monthly income available to pay his tax liabilities.  The Appeals officer rejected the taxpayer's $700 proposal, and we affirmed this decision.

could pay $426,000, which would have been sufficient to pay the tax liability in full. The Tax Court disagreed with the Appeals officer's determination that the taxpayers could pay approximately $426,000 and determined that the actual amount the taxpayers could pay was about $176,000. This was still more than the $150,000 that the taxpayers offered. The Court held: "Because their reasonable collection potential is greater than their offer amount, we find that [Appeals officer] Mr. Owens's rejection of petitioners' offer-in-compromise based on doubt as to collectibility was not arbitrary or capricious." Id. The Court of Appeals for the Ninth Circuit, in affirming Lindley (consolidated with other cases), similarly observed that "those relying on miscalculations [by the IRS] fail to demonstrate that, allowing for the errors, their offers do not remain below their ability to pay." Keller v. Commissioner, supra at 718.

In Carter v. Commissioner, T.C. Memo. 2007-25, affd. in part and vacated in part sub nom. Keller v. Commissioner, supra, the taxpayers made an offer-in-compromise of approximately $100,000.[16] The Appeals officer determined, after considering

---

[16]The Court of Appeals for the Ninth Circuit upheld this Court's decision in Carter v. Commissioner, T.C. Memo. 2007-25, insofar as relevant here but vacated it insofar as it dismissed the IRS's claim for former sec. 6621(c) increased interest for lack of jurisdiction. Keller v. Commissioner, 568 F.3d 710, 725 (9th Cir. 2009), affg. T.C. Memo. 2006-166, Lindley v. Commissioner, T.C. Memo. 2006-229, McDonough v. Commissioner, T.C. Memo. 2006-234, and Hansen v. Commissioner, T.C. Memo. 2007-
(continued...)

their assets and 86 months of income, that the taxpayers had an ability to pay about $381,000. The Appeals officer rejected the offer. At trial the IRS acknowledged that the Appeals officer had erred in computing the amount the taxpayers could pay. Although the Manual directed the officer to consider only 48 months of future income, she used 86 months. The recomputed amount that the taxpayers could pay was approximately $305,000. The court held that the error did not amount to an abuse of discretion because even using the recomputed number, the amount the IRS could collect was greater than the taxpayer's offer. The opinion states:

> Ms. Cochran [the Appeals officer] recomputed petitioners' reasonable collection potential using 48 months and determined that it was $304,782, instead of $380,706, as reflected in the notice of determination. Ms. Cochran testified that the change would not have had an effect on her final determination because, using either calculation, petitioners' reasonable collection potential was greater than their offer amount ($99,851). We find that Ms. Cochran's error did not amount to an abuse of discretion because, even when the error is corrected, petitioners' reasonable collection potential of $304,782 far exceeds their offer amount of $99,851.

---

[16](...continued)
56, and affg. in part and vacating in part Barnes v. Commissioner, T.C. Memo. 2006-150, Clayton v. Commissioner, T.C. Memo. 2006-188, Blondheim v. Commissioner, T.C. Memo. 2006-216, Ertz v. Commissioner, T.C. Memo. 2007-15, Abelein v. Commissioner, T.C. Memo. 2007-24, Carter v. Commissioner, T.C. Memo. 2007-25, Hubbart v. Commissioner, T.C. Memo. 2007-26, Freeman v. Commissioner, T.C. Memo. 2007-28, Johnson v. Commissioner, T.C. Memo. 2007-29, Estate of Andrews, T.C. Memo. 2007-30, Catlow v. Commissioner, T.C. Memo. 2007-47, and Smith v. Commissioner, T.C. Memo. 2007-73.

Id.

In Lloyd v. Commissioner, T.C. Memo. 2008-15, the taxpayer made an offer-in-compromise of about $140,000.  The Appeals officer rejected the offer.  The taxpayer challenged the Appeals officer's estimate of the amount the IRS could collect.  The taxpayer argued that his future income should have been calculated by using average income from the 7-year period from 1998 through 2004 rather than the 3-year period from 2002 through 2004 used by the Appeals officer.  The Court recalculated the amount using the taxpayer's proposed 7-year method and determined that the recalculated amount would be about $937,000.  The Court held that the Appeals officer committed no abuse of discretion in rejecting the offer.  Id.  The Court recognized that the Internal Revenue Manual required that an offer equal or exceed the amount the IRS can collect from the taxpayer in order to be accepted. Id.  Under the circumstances, rejecting the offer complied with the standards in the Manual.

In McClanahan v. Commissioner, T.C. Memo. 2008-61, the taxpayer made an offer-in-compromise of about $29,000.  The Appeals officer rejected the offer.  The taxpayer argued that the Appeals officer overestimated the amount that the IRS could collect.  In particular, the taxpayer believed that the officer erred in concluding that (1) the taxpayer had realizable equity of about $3,600 in retirement accounts, (2) the taxpayer had

realizable equity of $40,000 in his residence, and (3) the taxpayer could pay $22,000 out of future income.  The Tax Court held that it was unnecessary to consider these challenges because even accepting the taxpayers's arguments, the offer fell short of the revised amount that could be collected.  The Court said:

> We find it unnecessary to decide whether the settlement officer's determination of these amounts was appropriate because, even if all of the foregoing sources were disregarded, petitioner's reasonable collection potential would be $33,026.50; that is, the net realizable equity in his whole life insurance policies and cash.  Petitioner's highest offer-in-compromise was $29,030, an amount less than his reasonable collection potential computed without regard to his future income or any other assets. * * *  We do not conduct an independent review of what would be an acceptable offer-in-compromise or substitute our judgment for that of the Appeals Office.  Rather, the Appeals employee's decision to reject the offers-in-compromise will not be disturbed unless it is arbitrary, capricious, or without sound basis in fact or law.

Id. (citations and fn. refs. omitted).

In Atchison v. Commissioner, T.C. Memo. 2009-8, the taxpayer offered to compromise his tax liability for about $9,000.  This was below the amount of the IRS's estimate of what it could reasonably collect, which was approximately $91,000.  The IRS therefore rejected the offer.  The taxpayers challenged the amount that the IRS estimated it could reasonably collect, arguing that the amount should have been $70,311.  The Tax Court held that the IRS did not abuse its discretion in rejecting the

offer, for two reasons.  First, the Court held that the IRS's estimate was "reasonable".  Second, the Court held that any error in the estimate was harmless because the amount of the taxpayer's offer was less than the IRS's estimate of collection potential. Id.  On the last point, the Court cited as authority Lloyd v. Commissioner, supra, and Carter v. Commissioner, supra.

We apply the reasoning of Lindley, Carter, Lloyd, McClanahan, and Atchison to this case.  The Appeals officer rejected Brown's offer to make installment payments of $250 per month, a decision that was based upon the officer's incorrect estimate that Brown could afford payments of $700.  Brown argues now that the amount he could pay was $475 per month.  This appears to be a correct estimate, at least for the period before his younger son turned 19.[17]  Even so, the Appeals officer did not abuse her discretion in rejecting Brown's offer.  To have his offer considered, the Internal Revenue Manual required Brown to offer to pay as much as he was able to pay in order to qualify for an installment agreement.  He did not do so.  Neither the Manual nor the Code would have required the Appeals officer to make a counteroffer, or to suggest that Brown increase his offer, in the installment payment context.

---

[17]After his younger son turned 19, the amount Brown could pay would go up to $700.

The cases discussed above, which hold that the IRS has no duty to make a counteroffer after rejecting an inadequate offer, involved offers-in-compromise rather than installment payments. In the offer-in-compromise setting, the Internal Revenue Manual requires that the IRS advise the taxpayer to increase the offer to the "acceptable amount" if it is too low. Samuel v. Commissioner, T.C. Memo. 2007-312; 1 Administration, Internal Revenue Manual (CCH), pt. 5.8.4.6, at 16,336 (Sept. 23, 2008). There is no such provision requiring the IRS to advise the taxpayer to increase an installment-payment offer. Thus, the IRS has less of a duty to make counteroffers in the context of installment agreements.

In one case, the IRS was required to make a counteroffer after rejecting an inadequate offer. In Samuel v. Commissioner, supra, the taxpayer offered to compromise his tax liabilities for $30,000 on account of his inability to pay. The Appeals officer sent Samuel a preliminary determination letter indicating that the offer would need to be increased to approximately $163,000. The officer stated that this was not the "final amount determined to be an acceptable offer." The taxpayer never increased his offer. The Appeals officer made a determination to proceed with collection on the grounds that the IRS could collect more than

the $30,000 offer.[18]   This Court found that the amount the IRS could in fact collect was $107,094.  Noting that the Manual states that an Appeals officer who finds that an offer is insufficient should contact the taxpayer to advise the taxpayer to amend the offer to an acceptable amount, the Court held that the Appeals officer's failure to advise him that an acceptable amount was $107,094 was an abuse of discretion.  Id.  There is arguably some tension between Samuel and the Lindley line of cases discussed before.  We need not resolve this tension, as we consider Samuel distinguishable from our case.  The Court in Samuel expressly cited the existence of a Manual provision requiring the Appeals officer to do more than merely reject an inadequate offer-in-compromise.  No such provision exists with respect to installment agreements.  Therefore, Samuel does not apply here.

Holding that the Appeals officer did not abuse her discretion,

Decision will be entered for respondent.

------------------------

[18]The Appeals officer apparently determined an estimate of the reasonable collection potential.  Samuel v. Commissioner, T.C. Memo. 2007-312.  The opinion does not relate what this estimate was.