T.C. Memo. 2005-206

UNITED STATES TAX COURT

RICHARD T. AND CATHERINE L. LITES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19906-03L.                    Filed August 30, 2005.

<u>Robert E. McKenzie</u> and <u>Kathleen M. Lach</u>, for petitioners.

<u>Thomas D. Yang</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Pursuant to section 6330(d), petitioners seek review of an Appeals Office determination sustaining a proposed levy.[1]

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.

FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein by this reference. When they petitioned the Court, petitioners resided in Homewood, Illinois.

Background

Petitioner husband (hereinafter, Richard) is the primary wage earner for petitioners' family of four. Petitioner wife (hereinafter, Catherine) has had very limited work experience. At the time of trial, petitioners' children were 15 and 18 years old.

Until 1997, Richard worked as a municipal bonds salesman at various investment banking firms in Chicago, Illinois. According to his testimony, he was a "very, very good salesman" and in the early 1990s made "tremendous amounts of money". At some point, due to changes in the financial services industry, his income began to fall. In 1997, at age 53, Richard went into business with a friend providing management, consulting, and training services. Before making this job change, he had been earning about $120,000 a year. By 1998, his earnings had dropped to $54,173.

In January 1999, Richard had quintuple bypass surgery. He was unable to return to work until July 1999; he worked only about 10 weeks that year, earning $49,067. He did not return to work full time until May 2001, when he took a job with a trust

company.  He was terminated from that position in April 2002; he did not secure full-time employment again until October 2002, making about $9,500 per month.  As of the time of trial, Richard was earning about $10,000 per month; i.e., about the same as before his 1997 job change.

After his 1997 job change, Richard began liquidating his Individual Retirement Account (IRA).  Between 1998 and 2000, he took out $382,577 in early distributions.[2]  He used these IRA distributions partly to cover living expenses and partly for things such as making payments of about $700 per month on a recreational boat.[3]  In 1999, petitioners refinanced their residence and used the $37,500 proceeds principally to pay off credit card debts.

1999 and 2000 Federal Tax Returns

Petitioners' 1999 Federal income tax return was due, after extensions, on October 15, 2000; petitioners filed it on October 24, 2000.  Petitioners' 2000 Federal income tax return was due, after extensions, on October 15, 2001; petitioners filed it on November 14, 2001.

---

[2] Richard withdrew $198,107 from his IRA in 1998, $107,735 in 1999, and $76,735 in 2000.  He elected to have Federal income taxes withheld (in the amounts of $48,207 and $8,300, respectively) from the 1998 and 1999 withdrawals but not from the 2000 withdrawal.

[3] Richard testified that he had continued making payments on the boat until some 3 months before the trial in this case.

Petitioners' 1999 and 2000 returns reported amounts due but included no remittances. Petitioners made no estimated tax payments with respect to their 1999 and 2000 tax years.

Respondent assessed the amounts reported on petitioners' returns plus statutory additions to tax as follows:

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Tax | 6651(a)(1) | 6651(a)(2) | 6654 |
| 1999 | $38,074 | $858 | $763 | $814 |
| 2000 | 28,776 | 1,036 | 1,036 | 1,204 |

Petitioners' Default on 1999 Installment Agreement

On December 5, 2000, petitioners entered into an installment agreement to pay their 1999 income tax liability. Throughout 2001 they made sporadic payments totaling $3,394 before defaulting.

Proposed Collection Action

On October 24, 2002, respondent issued petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (the Final Notice) with respect to their income tax liabilities for 1999 and 2000.

The Final Notice showed that petitioners owed the following tax liabilities:

| Year | Amount due on return | Statutory additions | Total |
| --- | --- | --- | --- |
| 1999 | $19,214.29 | $5,077.31 | $24,291.60 |
| 2000 | 26,947.19 | 2,707.37 | 29,654.56 |

In response, petitioners timely filed a Form 12153, Request for Collection Due Process Hearing. Petitioners requested abatement of the statutory additions on the basis of reasonable cause and further requested an offer-in-compromise or, in the alternative, an installment agreement.

Appeals Officer's Conclusions

During the Appeals process, the parties conducted a hearing through written correspondence and telephone conversations. As requested, petitioners submitted a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On the Form 433-A, petitioners listed their assets and included an analysis showing total gross monthly income of $10,499 (including $500 wages for Catherine) and total monthly living expenses of $9,611. On the basis of this analysis, petitioners initially requested an installment agreement whereby they would pay $750 per month. The Appeals officer rejected this offer. By letter to petitioners' counsel dated August 25, 2003, the Appeals officer stated that on the basis of the financial information petitioners had submitted, she had determined that petitioners had "excess monthly income" of $2,732 per month. The letter also stated that the Appeals officer had determined that petitioners would need to pay $2,700 per month if they wished to enter into an installment agreement. The letter further stated: "This amount would allow the

liabilities to be paid in full prior to the time Mr. Lites would be expected to retire and there would be no requirement that the collection statute expiration date (CSED) be extended."

Petitioners increased their installment agreement offer to $1,000 per month. The Appeals officer also rejected this offer. In a letter to petitioners' counsel dated September 5, 2003, the Appeals officer stated:

> Regarding your request for an installment agreement of $1,000/mo., I do not feel the amount requested is adequate. Based on Mr. Lites' age, health concerns and the likelihood that he could retire prior to full payment, I do not feel that it would be in the best interest of the taxpayer or the Government to accept this amount. If Mr. Lites were to retire at 65, it is extremely unlikely that Mrs. Lites would be able to maintain this agreement based on what appears to be limited work experience. In addition, the taxpayers would be required to extend the collection statute expiration date (CSED) to at least the year 2014. It is my opinion that the granting of an installment agreement in the amount requested would place an undue burden on both of the taxpayers when the liabilities can be paid in full by 2007 if the taxpayers were to enter into an agreement in the amount indicated in my letter of August 25, 2003. Based on this discussion I will be unable to honor your request for the agreement in the amount of $1,000/mo.
>
> If the taxpayers do not wish to accept an installment agreement for $2,700/mo. please advise me no later than September 12, 2003.

In her September 5, 2003, letter, the Appeals officer agreed to abate the section 6651(a)(1) addition to tax for failure to timely file for 1999. The Appeals officer declined to consider petitioners' request to abate the section 6651(a)(1) addition to tax for 2000 on the ground that petitioners had "presented no

information explaining why the 2000 return was not filed timely".
In her letter, the Appeals officer stated that she would be
unable to recommend abating the section 6651(a)(2) addition to
tax for failure to pay for either 1999 or 2000 for several
reasons:  (1) Because petitioners had presented no evidence to
support their claim that Richard's heart surgery had diminished
his mental ability to function at his business; (2) because
petitioners had failed to submit evidence that the funds taken
from their savings were used for living expenses; and (3) because
petitioners had not shown ordinary care and prudence with respect
to the requirement to make estimated tax payments.

Shortly after receiving this letter, petitioners proposed an
installment agreement of $1,200 per month.  Apparently, the
Appeals officer rejected this counteroffer.

The Appeals Office issued a Notice of Determination
Concerning Collection Action(s) Under Section 6320 and/or 6330
(the Notice of Determination), dated October 29, 2003, sustaining
the proposed levy and denying petitioners' request for an
installment agreement.[4]  The Notice of Determination refers to

---

[4] The Notice of Determination Concerning Collection
Action(s) Under Section 6320 and/or 6330 (Notice of
Determination) states as its "Summary of Determination" simply
that "Based on all information available, the proposed collection
enforcement action is appropriate in this case."  An attachment
to the Notice of Determination, however, states that the Appeals
officer had recommended abating the sec. 6651(a)(1) addition to
tax for failure to timely file for 1999.  Respondent's proposed
(continued...)

and adopts the Appeals officer's reasons for rejecting petitioners' initial installment agreement proposal of $750 per month and subsequent proposal of $1,000 per month.[5]  The Notice of Determination states in part:

> The Appeals Officer reviewed previous and subsequent information submitted by the representative and determined that at a minimum you have excess available income of $2,732/mo.
>
> *     *     *     *     *     *     *
>
> The Appeals Officer sent your representative a letter dated August 25, 2003 advising that consideration was given to your age and health issues and it was

---

[4](...continued) findings of fact Number 18 states in part:  "The Notice of Determination recommended abatement of the failure to timely file penalty with respect to petitioners' 1999 income tax liability".  The transcripts of petitioners' account, as included in the record, do not appear to reflect any abatement of the sec. 6651(a)(1) addition to tax for 1999.  We treat respondent's proposed finding of fact as a concession that the sec. 6651(a)(1) addition to tax for 1999 should be abated, if it has not been already.

[5] The Notice of Determination does not specifically address petitioner's counteroffer of an installment agreement of $1,200 per month or the reasons why it was rejected.  The Notice of Determination does address, however, what was apparently a later-in-time proposal that is not otherwise alluded to in the record:

> Your representative contacted the Appeals Officer by telephone on September 11, 2003 and stated that you were willing to increase the monthly amount to $1,300 or $1,400/mo.  The Appeals Officer advised that it would not be in the best interest of the Government to accept this amount because you have not demonstrated that you are attempting to avoid balance due returns by increasing your withholding.  However, since the Appeals Officer had not required that the withholding be increased, the installment agreement would only be granted in the amount of $2,700/mo. * * *

determined that an installment agreement would be granted in the amount of $2,700/mo. because this amount was available monthly. In addition, payment of this monthly amount would ensure that the liabilities would be paid in full prior to the expected retirement date of Mr. Lites and there would be no requirement for extension of the collection statute expiration date (CSED). This determination was also contingent upon whether there was no balance due on the 2002 return that is due to be filed by October 15, 2003.

OPINION

If a person fails to pay any Federal income tax liability within 10 days of notice and demand, the Secretary is authorized to collect the tax by levy on the person's property. Sec. 6331(a). First, however, the person must be notified of the right to an administrative hearing. Sec. 6330(a). If one is requested, the administrative hearing is before the Appeals Office of the Internal Revenue Service. Sec. 6330(b)(1). At the hearing, the person may generally raise "any relevant issue relating to the unpaid tax or the proposed levy"; the person may also challenge the "existence or amount of the underlying tax liability" if the person received no statutory notice of deficiency or otherwise had no opportunity to dispute the tax liability. Sec. 6330(c)(2)(A) and (B). In addition, the person may raise at the hearing offers of collection alternatives, which may include, among other things, an installment agreement or offer in compromise. Sec. 6330(c)(2)(A)(iii).

In making a determination, the Appeals officer is required to take into consideration issues properly raised, the

verification that the requirements of applicable law and administrative procedures have been met, and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Sec. 6330(c)(3). Within 30 days after the Appeals Office issues a notice of determination, the person may appeal the determination to the Tax Court, if we have jurisdiction over the underlying tax liability, sec. 6330(d)(1), as we do in the instant case. For purposes of these provisions, "underlying tax liability" includes additions to tax. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

De Novo Review of Additions to Tax

In this proceeding, petitioners seek abatement of the section 6651(a)(1) additions to tax for late filing and of the section 6651(a)(2) additions to tax for failure to pay.[6] Petitioners were issued no notice of deficiency and have otherwise had no opportunity to dispute the underlying tax liability. Accordingly, petitioners may challenge the additions to tax. See sec. 6330(c)(2)(B); Downing v. Commissioner, 118 T.C. 22 (2002). Respondent has conceded that the section

---

[6] At trial and on brief, petitioners have made no argument and presented no evidence concerning the sec. 6654 additions to tax for failure to pay estimated income tax. We consider petitioners to have conceded the sec. 6654 additions to tax. See Rybak v. Commissioner, 91 T.C. 524, 566 (1988).

6651(a)(1) addition to tax for late filing should be abated for petitioner's 1999 tax year. We review de novo whether petitioners are liable for the remaining additions to tax under section 6651. See Downing v. Commissioner, supra at 29.

Section 6651(a)(1) Addition to Tax for Late Filing for 2000

Section 6651(a)(1) imposes an addition to tax for failure to file a return by the prescribed date (taking into account any extension of time for filing), unless it is shown that the failure is due to reasonable cause and not due to willful neglect. A showing of reasonable cause requires petitioners to demonstrate they exercised "ordinary business care and prudence" but were nevertheless unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. For illness to constitute reasonable cause for failure to file, petitioners must show that the surgery so incapacitated Richard that they could not file their 2000 return on time.

Petitioners contend that Richard's cardiac surgery in January 1999 and consequent employment hiatus constitute reasonable cause for petitioners' failure to timely file their 2000 return. Petitioners do not assert, and the record does not indicate, that Richard's illness would have prevented Catherine from tending to petitioners' filing obligations. Moreover, petitioners' 2000 tax return was due (after extensions) on October 15, 2001--about 2 years and 9 months after Richard's

cardiac surgery and well after he had returned to work full time. Moreover, petitioners' 1998 tax return, which was due October 15, 1999 (only about 9 months after Richard's cardiac surgery), was timely filed on October 8, 1999. We are not persuaded that Richard's health problems prevented petitioners from filing their 2000 tax return on time.[7] See, e.g., Ramirez v. Commissioner, T.C. Memo. 2005-179.

We conclude that petitioners are liable for the section 6651(a)(1) addition to tax for failure to timely file their Federal income tax return for tax year 2000.

Section 6651(a)(2) Addition to Tax for Failure To Pay

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of taxes shown on a return on or before the date prescribed (taking into account any extension of time for filing), unless it is shown that the failure is due to reasonable cause and not due to willful neglect. A taxpayer has reasonable cause for failure to timely pay a tax if:

> the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date. * * * Thus, for example, a taxpayer who incurs lavish or extravagant living expenses in an amount such

---

[7] We further note that petitioners' Forms 2688, Application for Additional Extension of Time to File U.S. Individual Income Tax Return, did not assert Richard's illness or purported resultant financial distress as a reason requiring an additional extension for 1999 or 2000.

that the remainder of his assets and anticipated income will be insufficient to pay his tax, has not exercised ordinary business care and prudence in providing for the payment of his tax liability. * * * A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due. [Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.]

Petitioners contend that Richard was unable to return to his former level of productivity after his surgery, thus limiting his ability to work and earn income. Richard, however, did return to employment in July 1999 and earned $49,067 in wages--almost as much as he had earned in the year before his surgery. When asked on direct examination why petitioners had not paid their 1999 and 2000 taxes, Richard did not mention his illness. Instead, he spoke at length about changes in the financial services industry that had made it a "long, steady climb" for him to regain his former income-earning potential.

From 1998 through 2000, Richard withdrew about $385,000 from his IRA; in 1999, petitioners refinanced their residential mortgage, taking out $37,500 in proceeds. Petitioners have not shown that they attempted to conserve these or other assets to meet their tax obligations or that they curtailed unnecessary expenses. To the contrary, as Richard conceded at trial: "I pretty much did not curtail things. * * * I also used some dollars for some frivolous things". For example, Richard

testified that he continued, until some 3 months before trial, to make payments of about $700 per month on a recreational boat.

We conclude that petitioners are liable for the section 6651(a)(2) additions to tax for failure to pay the amounts shown on their Federal income tax returns for 1999 and 2000.

Installment Agreement

On brief, petitioners argue that the Appeals officer abused her discretion in rejecting their installment agreement proposals. They requested an installment agreement whereby they would pay $1,200 per month in full discharge of their tax liabilities.[8] We review this matter for abuse of discretion. See Orum v. Commissioner, 123 T.C. 1, 12-13 (2004), affd. 412 F.3d 819 (7th Cir. 2005). An abuse of discretion occurs when respondent takes action that is arbitrary or capricious, lacks sound basis in law, or is not justifiable in light of the facts and circumstances. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

Pursuant to section 6159(a), as in effect during the period covering the administrative proceedings in this case, the

---

[8] In their request for an administrative hearing, petitioners requested an offer in compromise based on doubt as to collectability, and, in the alternative, an installment agreement. In the administrative hearing, however, petitioners pursued only an installment agreement. Consequently, the Appeals officer did not consider petitioners' eligibility for an offer in compromise. In this Court proceeding, petitioners have not argued that they should be entitled to an offer in compromise.

Secretary was authorized to enter into installment agreements with any taxpayer "to satisfy liability for payment of any tax in installment payments if the Secretary determines that such agreement will facilitate collection of such liability." The applicable regulations contemplated that an installment agreement would require the taxpayer to make scheduled periodic payments until the tax liability is fully paid.[9] Sec. 301.6159-1(a), Proced. & Admin. Regs. Respondent generally has the discretion

---

[9] In the American Jobs Creation Act of 2004 (AJCA 2004), Pub. L. 108-357, sec. 843(a)(1), 118 Stat. 1418, 1600, Congress amended sec. 6159 to authorize the Secretary to enter into installment agreements "under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability." The amendment is effective for installment agreements entered into on or after Oct. 22, 2004. AJCA 2004 sec. 843(c). The legislative history describes the reason for this amendment as follows:

The Committee believes that clarifying that the IRS is authorized to enter into installment agreements with taxpayers that do not provide for full payment of the taxpayer's liability over the life of the agreement will improve effective tax administration.

The Committee recognizes that some taxpayers are unable or unwilling to enter into a realistic offer-in-compromise. The Committee believes that these taxpayers should be encouraged to make partial payments toward resolving their tax liability, and that providing for partial payment installment agreements will help facilitate this. [H. Rept. 108-548, at 307 (2004).]

to accept or reject an installment agreement proposed by a taxpayer.[10]  Sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs.

Eligibility for an installment agreement is based on the taxpayer's current financial condition.  Internal Revenue Manual (I.R.M.) sec. 5.14.1.4(1) (effective July 1, 2002).  In requesting an installment agreement, a taxpayer must provide specific information, including a proposed monthly payment or other periodic payment amount.  I.R.M. sec. 5.14.1.3(4) (effective July 1, 2002).  The amount of the taxpayer's payment depends on his or her ability to pay.  I.R.M. sec. 5.14.1.4.3(1) (effective July 1, 2002).  For an installment agreement to be approved, a taxpayer must be in compliance with all filing requirements.  I.R.M. sec. 5.14.1.4.1(5) (effective July 1, 2002).

At the time of the administrative process in this case, the Internal Revenue Service generally limited the length of installment agreements to the 10-year statutory collection period as provided in section 6502(a)(2)(A), "except in instances when a reasonable extension of the statutory period for collection will allow an agreement to be accepted."  I.R.M. sec. 5.14.2.1(2) (effective Mar. 30, 2002).  Extensions were limited to no more

_____

[10] As an exception to this general rule, sec. 6159 requires the Commissioner to enter into installment agreements in certain circumstances (generally involving tax liabilities of less than $10,000) not presented by the instant case.  See sec. 6159(c).

than 5 years, plus up to 1 year to account for changes in the agreement (such as payment skips, interest rate changes, etc.). I.R.M. sec. 5.14.2.1(6) (effective Mar. 30, 2002).[11]

Petitioners initially requested an installment agreement that would require them to pay $750 per month, having submitted a Form 433-A that indicated they had $888 excess monthly income after taking into account monthly living expenses. After the Appeals officer rejected this proposal, petitioners counter-offered, first proposing to pay $1,000 per month and then proposing to pay $1,200 per month. The Notice of Determination addresses--and rejects--petitioners' proposals to pay $750 per month and $1,000 per month but does not expressly address petitioners' proposal to pay $1,200 per month.[12]

---

[11] Current Internal Revenue Service policy is to extend the collection statute expiration date only in conjunction with partial payment installment agreements and only in certain situations. I.R.M. sec. 5.14.2.1 (effective July 12, 2005).

[12] As previously noted, the Notice of Determination refers to an apparently last-in-time proposal by petitioners to pay $1,300 to $1,400 per month. The Notice of Determination indicates that the $1,300 to $1,400 per month offer was rejected because petitioners had failed to show that they were currently making adequate withholdings. At the same time, however, the Notice of Determination acknowledges that "the Appeals Officer had not required that the withholding be increased" and concludes that an installment agreement would be granted only in the amount of $2,700 per month. Such reasoning strikes us as a nonsequitur: It is not apparent why petitioners' failure to increase their tax withholding should doom their offer when that had not been made a precondition for an installment agreement, or indeed why it should be a precondition for petitioners' offer but not for the Appeals Office's counteroffer.

(continued...)

The Notice of Determination adopts the Appeals officer's finding that petitioners had excess monthly income of $2,732. The record does not reveal the basis for this finding.  We need not linger long over this matter, however, for on brief respondent concedes that petitioners' monthly income and expenses were identical to the amounts listed on their Form 433-A.[13] Effectively, then, respondent has conceded that petitioners' excess monthly income was $888, rather than $2,732 as found by the Appeals officer.  Respondent argues that the Notice of Determination should be sustained, however, because petitioners' installment agreement offers exceeded what petitioners could afford.  Respondent states on brief: "petitioners' overall financial situation indicated that they would be unable to comply with their proposed installment agreement until their liabilities are paid in full."

We are confused and perplexed by respondent's position.  In the first instance, by respondent's admission, petitioners had

---

[12](...continued)
Neither party has addressed this aspect of the Notice of Determination.  In this proceeding, petitioners seek a $1,200 per month installment agreement; they have not complained about, and respondent has not sought to defend, the Appeals Office determination regarding any $1,300 to $1,400 per month proposal. Consequently, we give this matter no further consideration.

[13] Citing petitioners' Form 433-A, respondent proposes as a finding of fact:  "As of May 28, 2003, petitioners [sic] then current monthly wage income was $10,499.00 and their then current total monthly living expenses was [sic] $9,611.00."

available excess monthly income of $888, which would have more than covered their offer of $750 per month. Moreover, the Internal Revenue Manual does not appear to contemplate rejecting an installment agreement merely because the taxpayer has offered more than the Commissioner believes the taxpayer can afford.[14] Finally, and most fundamentally, respondent's position on brief conflicts directly with the rationale articulated in the Notice of Determination. The Appeals Office rejected petitioners' installment agreement proposals largely on the basis that petitioners could afford to pay much more than they had offered. Now, apparently, respondent seeks to defend this action on the opposite ground that petitioners could not afford to pay as much as they had offered. Respondent cannot have it both ways.

The finding that petitioners could afford to pay $2,732 per month appears central to the decision in the Notice of Determination to reject petitioners' installment agreement

---

[14] I.R.M. sec. 5.14.1.4(9) (effective July 1, 2002) states:

> If an analysis of the taxpayer's financial condition shows taxpayers cannot pay:
>
> • but they insist on installment agreements;
> • amounts proposed will fully pay the bal [sic] due account(s) within the collection statute (and waiver period if appropriate);
> • but the possibility remains that payments cannot be made;
>
> then prepare a backup Form 53 along with the installment agreement in case of eventual default and termination. * * *

proposals. For instance, having found that petitioners have excess monthly income of $2,732 per month, the Appeals officer concluded that petitioners' offers to pay $750 per month and $1,000 per month (and ostensibly their offer to pay $1,200 per month, although the Appeals officer's reasons for rejecting this offer are not explicitly documented in the record) would not be in the best interests of either petitioners or the Government, reasoning that, in light of Richard's age and health and other factors, petitioners and the Government both would be better off if the liabilities were paid off sooner rather than later. If, however, as respondent now asserts, petitioners could not afford to pay the lesser amounts that they had offered, then it would not appear to serve either petitioners' or the Government's interests to require petitioners to pay the much higher amount of $2,700 per month, as the Appeals Office insisted.[15]

---

[15] In addition, the Appeals officer indicated that petitioners' payment proposals would require extending the collection statute expiration date to at least the year 2014, whereas if petitioners accepted the Appeals officer's offer of a $2,700 per month installment agreement, the tax liabilities could be paid in full by 2007. The record does not reflect the basis for the Appeals officer's conclusion that accepting petitioners' installment proposals would require extending the collection statute expiration date to 2014, or to what extent this conclusion was meant to apply to petitioners' offer to pay $1,200 per month (which is not expressly addressed in the Appeals officer's letters or in the Notice of Determination). Simple math shows that petitioners' proposal to pay $1,200 per month would result in total payments of $72,000 over 5 years. Considering that petitioners' unpaid tax liabilities for 1999 and 2000 (after taking into account respondent's concession of the sec. 6651(a)(1) addition to tax for 1999, but without taking into

(continued...)

As support for the Appeals Office decision to reject petitioners' installment agreement proposals, respondent points to petitioners' default on a prior installment agreement. Granted, such a circumstance might appropriately be considered by the Appeals Office as a ground for rejecting an installment agreement proposal. See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004). In the instant case, however, the Appeals Office apparently did not regard petitioners' prior default as a reason to deny them a new installment agreement. To the contrary, it offered petitioners a new installment agreement (of $2,700 per month), notwithstanding their prior default. A consideration that played no part in the Appeals Office determination--and in fact is controverted by it--cannot provide the basis for sustaining that determination.[16]

---

[15](...continued)
account interest accruals) totaled $53,088, it is not apparent that petitioners' $1,200 per month proposal would require extending the 10-year collection statute expiration date at all, much less to 2014.

[16] For similar reasons, we do not find persuasive respondent's argument on brief that the Appeals officer's rejection of petitioners' installment agreement should be sustained on the ground that petitioners "continued to live beyond their means as petitioners failed to curb their credit card debt." We find no indication in the record that such a consideration played any part in the Appeals officer's determinations, and we are not persuaded that respondent's apparent afterthought in this regard suffices to sustain the Notice of Determination. In reaching this conclusion, we do not mean to suggest that respondent is invariably confined strictly to the four corners of the Notice of Determination or to the evidence compiled during the administrative proceeding. Cf.
(continued...)

Conclusion

The Notice of Determination rejected petitioners'
installment agreement proposals (without expressly referring to
petitioners' $1,200 per month proposal) largely on the basis of a
finding that petitioners had excess income of $2,732.  Respondent
has effectively conceded that this finding was erroneous and
thereby inadvertently convinced us that, insofar as it relates to
petitioners' proposed installment agreements, the Notice of
Determination was not justifiable in light of the facts and
circumstances.  Accordingly, we hold that it was an abuse of
discretion to issue the Notice of Determination in these
circumstances.

In their petition, petitioners request as relief that they
"be granted an installment agreement in an amount they will
reasonably be able to afford."  On brief, petitioners request
that "a proposed payment plan of $1,200 per month be accepted to
fully address the tax liability."  We have no basis, however, for
evaluating the amount petitioners can now reasonably afford or
for deciding whether an installment payment plan of $1,200 per
month--or of any other particular amount--is an appropriate
collection alternative in light of petitioners' current financial
condition and circumstances, whatever those might be.
Accordingly, we believe that it is "necessary and productive" to

---

[16](...continued)
Robinette v. Commissioner, 123 T.C. 85 (2004).

remand this case to the Commissioner, whom the law authorizes to make installment agreements.  Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); see Harrell v. Commissioner, T.C. Memo. 2003-271 (concluding that the issuance of a notice of determination was an abuse of discretion and remanding the matter to the Commissioner for the sole purpose of allowing the taxpayer to pursue collection alternatives), motion for reconsideration denied T.C. Memo. 2003-312.

We shall remand this matter to the Commissioner for the sole purpose of reconsidering petitioners' $1,200 per month installment agreement proposal or such other collection alternatives as petitioners might now wish to offer.  In evaluating any such collection alternatives, the Commissioner should consider petitioners' current financial circumstances, petitioners' current paying and filing compliance, and any other relevant factors.  The Commissioner should also take into account, to the extent relevant, applicable amendments to section 6159(a), which authorize partial payment installment agreements. Petitioners may not further challenge the imposition of the section 6651(a)(1) and (2) additions to tax or raise any new or additional issues beyond offering collection alternatives.

To reflect the foregoing,

                                        An appropriate order

                                        will be issued.