T.C. Memo. 2012-100

UNITED STATES TAX COURT

B.M. VANMALI AND BHARI VANMALI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4235-09L.                    Filed April 9, 2012.

Harris Hastings Barnes III, for petitioners.

John F. Driscoll and John W. Sheffield III, for respondent.

MEMORANDUM OPINION

THORNTON, Judge:  This matter is before the Court on respondent's

motion for summary judgment, filed pursuant to Rule 121.[1]  The issue for decision

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules
of Practice and Procedure, and all section references are to the Internal Revenue

(continued...)

is whether respondent abused his discretion in sustaining a proposed levy to collect petitioners' unpaid Federal income taxes for 1993 through 1996. As discussed below, we shall grant respondent's motion.

## Background

On June 14, 2004, respondent assessed petitioners' Federal income tax liabilities for taxable years 1993 through 1996.[2] On July 30, 2007, respondent sent petitioners a Final Notice--Notice Of Intent To Levy And Notice Of Your Right To A Hearing for unpaid tax liabilities totaling $599,687 for taxable years 1993 through 1996. In response, petitioners submitted a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing. The Form 12153 indicated that petitioners wished to pursue a collection alternative, checking the box for "Offer in Compromise".

On January 11, 2008, petitioners submitted a Form 656, Offer in Compromise, indicating that they wished to pursue an offer-in-compromise due to

_____

[1](...continued)
Code. All monetary amounts have been rounded to the nearest dollar.

[2]Although the record is inconclusive on this point, it appears that petitioners filed Federal income tax returns for the years at issue but underpaid the taxes reported thereon and that respondent subsequently determined a deficiency for each year at issue.

doubt as to collectibility.[3]  Petitioners offered to pay $295,805 in 60 monthly payments of $4,930 each.  In arriving at the amount of their offer, they calculated their average monthly income to be $8,746.[4]

On November 18, 2008, respondent's settlement officer held a hearing with petitioners' representative.  According to the settlement officer's case activity record, he informed the representative that he had calculated petitioners' average monthly income to be $17,105, rather than $8,746, as indicated in the attachment to their Form 656.  The difference between these two amounts was due largely to differing assumptions about petitioners' available income from several S corporations in which they held interests.[5]  Petitioners' calculation included a three-year average of distributions they had actually received from the S

[3]On the Form 656 petitioners proposed to compromise their individual income tax liabilities for tax years 1993 through 1996, as well as outstanding liabilities from Forms 945, Annual Return of Withheld Federal Income Tax, for Vanmali Construction Co. for tax years 1994 and 1995.

[4]A spreadsheet attached to the Form 656 detailed petitioners' calculation of their offer amount.  It indicated that petitioners had $8,746 in monthly income and $8,672 in monthly necessary living expenses; the $74 difference between income and expenses was then multiplied by 48 months to arrive at a future income value of $3,552.  This number was added to petitioners' reported $292,253 of equity in their assets to arrive at their offer of $295,805.

[5]According to Forms 1120S, U.S. Income Tax Return for an S Corporation, filed for tax year 2006, petitioners wholly owned one S corporation, BMV, Inc., and held partial ownership interests in seven other S corporations.

corporations. By contrast, the settlement officer's calculation included petitioners' pro rata share of income from the S corporations as reported on their 2006 and 2007 Federal income tax returns, without regard to whether they actually received this income. The settlement officer also determined petitioners' allowable monthly living expenses to be $6,729, rather than the $8,672 that they had indicated. As a result, according to his case activity record, the settlement officer advised petitioners' representative that he had calculated their reasonable collection potential (RCP) to be "in excess of $1.3 million".[6]

On November 25, 2008, petitioners' representative and the settlement officer had a followup conference. According to his case activity record, the settlement officer acknowledged the disagreement about the proper treatment of petitioners' S corporation income but indicated that irrespective of this issue he believed their offer-in-compromise was inadequate because it failed to reflect the current value of their interests in various S corporations. The settlement officer

---

[6]Although the case activity record is unclear on this point, the settlement officer appears to have arrived at this conclusion by multiplying the $10,376 difference between his calculation of petitioners' average monthly income and allowable monthly living expenses by the 112 months remaining in the collection period of limitations to compute the future value component of petitioners' RCP. The settlement officer appears to have then added that component to his calculation of the present value of petitioners' various assets to arrive at their RCP.

indicated that he had determined the net realizable equity (NRE) of the real estate owned by their wholly owned S corporation, BMV, Inc., to be over $364,000, which was significantly greater than the amount of their offer. He asked whether petitioners could increase their offer or propose a different collection alternative. Petitioners requested more time to consider their options. On January 5, 2009, the settlement officer noted in his case activity record that no further response or information had been received from petitioners.

On January 21, 2009, respondent issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy. Respondent determined that petitioners' RCP was $1,296,531.[7] The notice of determination indicated that because petitioners' RCP was greater than their offer of $295,805, and there were no indications that special circumstances existed, petitioners' offer was rejected and the decision to proceed by levy was sustained.

---

[7]The attachment to the notice of determination sets forth respondent's calculation of petitioners' RCP and includes $17,105 in average monthly income based on petitioners' 2006 and 2007 individual Federal income tax returns. The calculation does not include petitioners' NRE in each of their various businesses.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). When a motion for summary judgment is made and properly supported, the adverse party may not rest upon mere allegations or denials of the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). If the adverse party does not so respond, then a decision may be entered against such party. Id.

Section 6331(a) provides that if any taxpayer liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, then the Secretary is authorized to collect such tax by levy upon the taxpayer's property. Section 6330(a) requires the Secretary to send written notice to the

taxpayer of the taxpayer's right to request a section 6330 collection due process (CDP) hearing before a levy is made. If a CDP hearing is requested, the hearing is conducted by the Commissioner's Appeals Office. At the hearing, the settlement officer must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). The taxpayer may raise any relevant issue relating to the collection of the unpaid tax. Sec. 6330(c)(2)(A). Our review of the settlement officer's determination is limited to issues that the taxpayer raised at the CDP hearing. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

The only issue petitioners have raised in their objection to respondent's motion for summary judgment is the settlement officer's rejection of their proposed offer-in-compromise. We review this issue for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610-612 (2000). Under this standard of review the question is whether the settlement officer's rejection of their offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Fowler v. Commissioner, T.C. Memo. 2004-163. For the reasons discussed below, we conclude that it was not.

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an offer-in-compromise is left to the Secretary's sound exercise of discretion. Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), aff'g T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs. In general, an offer-in-compromise based on doubt as to collectibility will be acceptable only if it is for an amount at least as great as the taxpayer's RCP. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517.

In his motion for summary judgment, without conceding any error by the settlement officer, respondent asserts that even if one were to assume, solely for purposes of his motion, the accuracy of "many" of the items reflected in petitioners' offer amount, their computation nevertheless contains "clear errors". Respondent asserts that correcting these errors would indicate that, consistent with petitioners' own assumptions, their offer should have been no less than $349,740, rather than the $295,805 they actually offered. Petitioners do not dispute this conclusion; to the contrary, they state that they will "assume Respondent's changes are correct". They observe, however, that "the difference between $349,740 and Petitioners' offer of $295,805 is a lot less than the difference between $1,296,531 [their RCP as determined by the settlement officer] and

$295,805." They assert that had the settlement officer determined their RCP to be $349,740, they would have been "ready, willing, and able to make a counter-offer in that amount." Citing Lites v. Commissioner, T.C. Memo. 2005-206, they argue because the settlement officer's alleged error was so central to his determination, he abused his discretion in rejecting their offer.

Whatever error the settlement officer might have made in calculating petitioners' RCP--and respondent does not expressly concede that the settlement officer made any error--the undisputed fact remains that petitioners could afford to pay significantly more than they offered. In these circumstances, notwithstanding alleged errors in the settlement officer's calculation of petitioners' RCP, he did not abuse his discretion in rejecting their offer. See, e.g., Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009) (finding no abuse of discretion in the Commissioner's rejecting a proposed offer-in-compromise where, after allowing for a computational error in the taxpayers' RCP as determined by the Appeals Office, the taxpayer failed to show that the errors affected the Commissioner's determination that he could afford to pay more than his offer), aff'g in part, vacating in part Barnes v. Commissioner, T.C. Memo. 2006-150; Atchison v. Commissioner, T.C. Memo. 2009-8 (granting summary judgment for the Commissioner where, even after allowing for certain expenses disallowed by the

Appeals Office in computing the RCP, it was still far greater than the amount of the taxpayers' offer); Lloyd v. Commissioner, T.C. Memo. 2008-15 (granting summary judgment for the Commissioner where, notwithstanding alleged errors in the settlement officer's calculation of the taxpayer's future monthly income, the RCP still exceeded the taxpayer's offer).

Unlike Lites, this is not a case in which respondent has taken a position at odds with the settlement officer's determination.[8] Respondent's position, consistent with the settlement officer's determination, is that petitioners' offer-in-compromise was unacceptable because it was significantly less than they could afford to pay.

Petitioners assert that they would have counteroffered $349,740 if the settlement officer had properly advised them that this was the correct amount of their RCP. But petitioners have effectively conceded that it was their own errors

---

[8]In Lites v. Commissioner, T.C. Memo. 2005-206, the Appeals officer had rejected a proposed installment agreement on grounds that the taxpayers' monthly income exceeded the amount they had offered to pay. In the Tax Court, the Commissioner reversed course and argued that the Appeals officer's decision should be upheld for the opposite reason that the taxpayers' installment agreement proposal exceeded what they could afford to pay. Finding that the Commissioner had effectively conceded error in a determination that was "central" to the Appeals officer's decision to reject the taxpayers' proposed collection alternative, we held that the notice of determination was not justifiable in the light of the facts and circumstances. Id.

that caused their offer to understate the amount they could afford to pay, even under their own financial assumptions. The settlement officer did not abuse his discretion in rejecting their admittedly too low offer.[9]

In their opposition to respondent's motion for summary judgment, petitioners have not asserted that there is any dispute as to any issue of material fact such that a decision may not be rendered as a matter of law. Apart from challenging the rejection of their offer-in-compromise, petitioners' opposition to respondent's motion for summary judgment raises no issue that would suggest that respondent has otherwise failed to satisfy the requirements of section 6330. We deem petitioners to have waived or conceded any such issues. Accordingly, we conclude that respondent is entitled to summary judgment.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

---

[9]We note that it also seems unlikely that the settlement officer would have considered an offer of $349,740 to adequately reflect petitioners' ability to pay. According to his case activity record, he had determined that the NRE of petitioners' wholly owned S corporation exceeded this amount. The record indicates that although the settlement officer raised this issue with petitioners and gave them an opportunity to respond, they never did so.