T.C. Memo. 2013-208

UNITED STATES TAX COURT

CHARLES M. GLOSSOP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13972-11L.                    Filed September 3, 2013.

Neal J. Shapiro and Paul J. Quast, for petitioner.

Shaina E. Boatright and Kristin M. Timmons, for respondent.

MEMORANDUM OPINION

BUCH, <u>Judge</u>:  This case is before the Court on cross-motions for summary

judgment.  The issue for decision is whether respondent abused his discretion in

sustaining a proposed levy to collect petitioner's unpaid trust fund recovery

penalties for periods ending March 31, 2005, through March 31, 2006.  Because

[*2] we conclude that the underlying liability is not properly at issue and that respondent did not abuse his discretion in rejecting collection alternatives, we will grant respondent's motion.

Background

At the time the petition was filed, Mr. Glossop resided in Minnesota.

During 2006 Mr. Glossop was president and owner of Maple Crest Landscape, LLC. In late 2006 Mr. Glossop learned that the company controller he hired was harassing employees and stealing from the business. After Mr. Glossop fired the controller, he found notices from the IRS regarding unpaid employment taxes.

Around this same time Mr. Glossop's marriage was ending. It was formally dissolved on June 25, 2007, when a family court entered findings of fact and divided the marital assets. Mr. Glossop retained 100% of Maple Crest (valued at $1,500,000), 100% of Hantho Farms, LLC (another entity he owned that was valued at $400,000), a Britannia bank account (valued at approximately $28,000), a home with equity, and various real estate interests. He was also assigned tax liabilities of approximately $650,000 relating to one or more of his businesses. In

**[*3]** late 2007 Mr. Glossop sold Maple Crest to his operations manager for $752,330.39.[1]

On September 30, 2009, respondent mailed to Mr. Glossop a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. At that time Mr. Glossop's outstanding trust fund recovery penalty liability totaled $302,137.95. He timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which he requested both an installment agreement and an offer-in-compromise. In explaining why the IRS should not sustain the levy, he wrote "proposing offer in compromise". Mr. Glossop also provided a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, on which he listed "wages"[2] of $2,500 per month and living expenses of $12,018 per month.

Respondent's revenue officer Cathy Healy made at least two separate requests for documents and information both to verify the items Mr. Glossop disclosed on his Form 433-A and to obtain information about assets respondent

---

[1]Although the allocation of purchase price in the purchase agreement assigns a portion of the sale price to State sales tax, there is no mention of Maple Crest's Federal tax liabilities in the purchase agreement documents in the record.

[2]Mr. Glossop's draft 2009 Form 1040, U.S. Individual Income Tax Return, lists no wages but reported business income from Hantho Farms of $32,083, the entirety of its profit.

**[*4]** located through public and internal records that Mr. Glossop did not disclose on his Form 433-A. Mr. Glossop and his representative provided documents and explanations in response to each set of requests, but each submission raised additional questions, no submission was complete standing on its own, and even the various submissions taken together were incomplete in the aggregate.

On January 19, 2010, respondent received Mr. Glossop's Form 656, Offer in Compromise, in which he proposed to settle his trust fund recovery penalty liability for $12,550, payable in monthly installments of $250, on the basis of doubt as to collectibility. On the Form 656 Mr. Glossop did not provide a description or explanation of what circumstances would affect his ability to fully pay the trust fund recovery penalty liability, nor did he include information regarding the source of the funds from which he intended to pay the offered amount.

On March 12, 2010, Offer Specialist Joe Kennedy sent Mr. Glossop a letter notifying him that the offer-in-compromise had been assigned for consideration. The letter also included a list of documents that the offer specialist required in order to evaluate the offer and posed questions the offer specialist had regarding various discrepancies in the documents that Mr. Glossop previously had provided. The offer specialist requested a response by April 12, 2010. On April 20 the offer

**[*5]** specialist made a second request for information and documents to be provided by May 7. The request included documents that had previously been requested of, but not provided by, Mr. Glossop.

Again, Mr. Glossop and his representative provided documents and explanations in response to each set of requests, but no submission was complete and each submission raised additional questions. For example, Mr. Glossop provided a draft 2009 Form 1040 in which he listed income of $32,083 and alimony paid of $65,300, which raised the question of whether Mr. Glossop had additional undisclosed income or other undisclosed assets at his disposal from which he paid the alimony. Additionally, the offer specialist included in his calculations certain assets that had been owned by Mr. Glossop but had been dissipated, because Mr. Glossop had failed to timely provide documents that reflected the disposition of those assets.

On May 18, 2010, the offer specialist sent Mr. Glossop a letter stating that based on review of the documents Mr. Glossop provided, the offer specialist determined that Mr. Glossop could fully pay the liability. That letter requested any additional information within 14 days. After receiving no additional information, the offer specialist sent Mr. Glossop a letter proposing to reject the

[*6] offer if Mr. Glossop did not provide any additional information within 30 days and also providing instructions on how to request Appeals reconsideration.

On August 16, 2010, respondent sent Mr. Glossop a letter acknowledging his appeal of the offer specialist's decision to reject the offer-in-compromise and notifying him that the case had been received by the Office of Appeals. After initially assigning the case to the St. Paul, Minnesota, Office of Appeals, respondent later reassigned the case to the Kansas City, Missouri, Office of Appeals. In February 2011 respondent issued Mr. Glossop a letter acknowledging receipt by the Office of Appeals of his case for consideration, and in early March Settlement Officer Paul Mazan sent Mr. Glossop a letter scheduling his collection due process hearing for later that month. In that letter, Mr. Mazan requested information that would clarify Mr. Glossop's collection potential, including the following:

- A Form 433-B, Collection Information Statement for Businesses, for all businesses in which Mr. Glossop had an ownership interest;

- Information showing Mr. Glossop's 2010 income, such as Forms 1099-Misc, Miscellaneous Income, or Forms W-2, Wage and Tax Statement;

- A copy of Mr. Glossop's divorce decree; and

[*7] •     Documents supporting Mr. Glossop's disputes with the IRS' evaluation of his collection potential that underlay his disagreement with the offer specialist's decision to reject the offer-in-compromise.

Mr. Glossop's representative requested that the hearing be postponed until at least April 30, 2011. The delay was requested, at least in part, because Mr. Glossop's accountant would not have finished preparing the 2010 financial information for Hantho Farms until the end of April 2011. Mr. Mazan agreed to postpone the hearing twice, and it was ultimately held on April 14, 2011. In the interim Mr. Glossop provided various documents to Mr. Mazan, including an unsigned Form 433-A listing Mr. Glossop's monthly "wages"[3] of $1,900 and living expenses of $4,319 and an unsigned Form 433-B for Hantho Farms listing monthly gross receipts of $12,000 and business expenses of $10,108. Mr. Glossop also provided family court documents regarding his divorce and division of assets.

On April 14, 2011, Mr. Mazan held the collection due process hearing by telephone with Mr. Glossop and his representative. Having received additional information, Mr. Mazan was able to adjust the value or eliminate the inclusion of some assets in respondent's previous calculation of Mr. Glossop's reasonable collection potential. Mr. Mazan inquired about the $28,000 in the Britannia

---

[3]Mr. Glossop received no wages; rather, he received business income from Hantho Farms.

[*8] account and requested supporting documents concerning that account. In addition to discussing collection potential, the parties discussed Mr. Glossop's ongoing noncompliance, including his failure to make an employment tax quarterly payment for 2010 for Hantho Farms and his failure to make estimated tax payments for the first quarter of 2011. Mr. Mazan gave Mr. Glossop an additional week to correct his employment tax and estimated tax obligations and to provide documentation regarding the Britannia account. On April 22, 2011, Mr. Glossop's representative called Mr. Mazan and requested an additional week for Mr. Glossop to satisfy his employment tax liability and to provide information about the Britannia account, but Mr. Mazan did not allow additional time.

There were several shortcomings in the information provided by Mr. Glossop. He never provided his 2010 Form 1040 or a Schedule C, Profit or Loss From Business, for Hantho Farms, although he did provide a preliminary financial statement for Hantho Farms. Nor did he document the balance in the Britannia account. And it appears that Mr. Glossop had not satisfied the delinquent employment tax quarterly payment for 2010 before the notice of determination was issued.

On May 10, 2011, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed

**[*9]** levy. This determination was based on Mr. Glossop's (1) failure to provide all requested financial information, (2) his noncompliance with his employment tax obligations, and (3) his ability to pay more than he had offered. The notice of determination included an asset and equity table used by the offer specialist and updated by Mr. Mazan to calculate Mr. Glossop's collection potential and an explanation of his three-year income average computation to arrive at the amounts of average monthly income and allowable expenses. Mr. Glossop timely filed a petition disputing the determination to sustain the proposed levy.

While this case has been pending Mr. Glossop submitted to respondent's counsel a second offer-in-compromise. Respondent's counsel did not forward the request for processing because the form was incomplete. Although respondent's counsel allowed Mr. Glossop additional time to provide the missing information, Mr. Glossop never provided the additional information.

The parties filed cross-motions for summary judgment. On February 6, 2013, respondent filed a motion for summary judgment. On March 8, 2013, Mr. Glossop filed a memorandum in opposition to respondent's motion for summary judgment and his own motion for summary judgment.

**[*10]**                                    Discussion

Either party may move for summary judgment regarding all or any part of the legal issues in controversy.[4]  We may grant summary judgment only if there are no genuine issues of fact.[5]  The moving party bears the burden of proving that no genuine issue exists as to any material fact and that it is entitled to judgment as a matter of law.[6]  In deciding whether to grant summary judgment, the factual materials and the inferences drawn from them must be considered in the light most favorable to the nonmoving party.[7]  When a motion for summary judgment is made and properly supported, the nonmoving party may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine dispute for trial.[8]  We have found that there is no genuine dispute as to any material fact and therefore a decision may be rendered as a matter of law.

_____

[4]See Rule 121(a).  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect at all relevant times.

[5]See Naftel v. Commissioner, 85 T.C. 527, 528-529 (1985).

[6]See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

[7]See FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 559 (2000); Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. at 529.

[8]See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Sundstrand Corp. v. Commissioner, 98 T.C. at 520; see also Rule 121(d).

**[*11]** <u>Underlying liability</u>

When the underlying tax liability is properly at issue, we review the Commissioner's determination de novo; when the validity of the underlying tax liability is not properly at issue, we review the Commissioner's administrative determination for an abuse of discretion.[9]  A taxpayer's underlying liability is properly at issue only if the taxpayer did not receive a notice of deficiency for the liability or did not otherwise have an opportunity to dispute that tax liability.[10]  Mr. Glossop's underlying liability is for trust fund recovery penalties under section 6672, which were assessed for the failure to collect, account for, and pay over income tax and employment taxes of employees.

Generally, a taxpayer must raise an issue at a collection due process hearing to preserve it for this Court's consideration.[11]  The record does not reflect that Mr. Glossop raised the issue of his liability for the trust fund recovery penalties in the Form 12153 or at the collection due process hearing, nor does Mr. Glossop dispute

---

[9]<u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).

[10]<u>See</u> sec. 6330(c)(2)(B).

[11]<u>Perkins v. Commissioner</u>, 129 T.C. 58, 63 (2007) (de novo review); <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002) (abuse of discretion review); sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

**[\*12]** the underlying liability in the petition. Therefore, the underlying liability is not at issue in this case and we review respondent's notice of determination for abuse of discretion.[12]

A taxpayer may prove an abuse of discretion by showing that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.[13]

Collection Alternatives

A taxpayer may raise collection alternatives that may include an installment agreement or an offer-in-compromise.[14] Although Mr. Glossop indicated his interest in an installment agreement on the Form 12153, he did not propose any such installment agreement. There can be no abuse of discretion for failure to consider an installment agreement because Mr. Glossop did not propose any terms for an installment agreement.[15]

---

[12]See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.

[13]See Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

[14]Sec. 6330(c)(2)(A)(iii).

[15]See Veneziano v. Commissioner, T.C. Memo. 2011-160 (citing Kendricks v. Commissioner, 124 T.C. 69, 79 (2005)).

**[*13]** Section 7122(a) authorizes the IRS to compromise a liability. To make an offer-in-compromise of a liability, a taxpayer must submit a Form 656 or otherwise describe his income, assets, and other financial information that would be included on Form 656.[16] The regulations under section 7122(a) set forth three grounds for the compromise of a tax liability: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration.[17] Generally, the IRS will accept an offer-in-compromise of a liability based on doubt as to collectibility only if the offer reflects the taxpayer's "reasonable collection potential".[18]

Reasonable collection potential is generally calculated by multiplying a taxpayer's monthly income available to pay taxes by the number of months remaining in the statutory period for collection and adding to that product the realizable net equity in the taxpayer's assets.[19] This Court has sustained the Commissioner's use of the IRS' published national and local allowances as

---

[16]See Godwin v. Commissioner, T.C. Memo. 2003-289, aff'd, 132 Fed. Appx. 785 (11th Cir. 2005); sec. 301.7122-1(d)(1), Proced. & Admin. Regs.

[17]Sec. 301.7122-1(b), Proced. & Admin. Regs.

[18]See Johnson v. Commissioner, 136 T.C. 475, 485 (2011), aff'd, 502 Fed. Appx. 1 (D.C. Cir. 2013); see also Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517.

[19]See Johnson v. Commissioner, 136 T.C. at 485.

**[\*14]** guidelines for basic living expenses in evaluating the adequacy of proposed installment agreements and offers-in-compromise.[20] More particularly, there is no abuse of discretion where Appeals officers use the housing and utilities standard allowances rather than the taxpayer's actual expenses.[21]

The IRS may reject an offer because the taxpayer's ability to pay is greater than the amount he proposes to pay.[22] We do not substitute our judgment for that of Appeals and decide whether in our opinion Mr. Glossop's offer should have been accepted.[23]

Reasonable Collection Potential

On January 19, 2010, respondent received Form 656 from Mr. Glossop, proposing to pay $12,550 to compromise the trust fund recovery penalty liability,

---

[20]See Speltz v. Commissioner, 124 T.C. 165, 179 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006); Fernandez v. Commissioner, T.C. Memo. 2008-210.

[21]See Diffee v. Commissioner, T.C. Memo. 2007-304; McDonough v. Commissioner, T.C. Memo. 2006-234, aff'd in part sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009).

[22]See Johnson v. Commissioner, 136 T.C. at 486; see also Fargo v. Commissioner, 447 F.3d 706, 709-710 (9th Cir. 2006), aff'g T.C. Memo. 2004-13.

[23]See Murphy v. Commissioner, 125 T.C. 301, 320 (2005) (citing Fowler v. Commissioner, T.C. Memo. 2004-163), aff'd, 469 F.3d 27 (1st Cir. 2006); Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009).

**[\*15]** and indicating the offer was based on doubt as to collectibility. Although Mr. Glossop provided documents throughout the year and a half the offer was under review, he never provided complete and up-to-date financial information. As a result, it was not an abuse of discretion for respondent to use a three-year income average to calculate Mr. Glossop's monthly income based primarily on the profits of Hantho Farms. Likewise, respondent did not abuse his discretion in calculating Mr. Glossop's allowable monthly expenses using national and local standards.

Both the offer specialist and Mr. Mazan used the documents Mr. Glossop provided to identify and adjust the values of his assets. Based on the documents provided at the time of each calculation, both calculations show that Mr. Glossop had sufficient assets and future income to fully pay the liability. As a result, Mr. Glossop's reasonable collection potential was in excess of his offer and the offer was rejected in part on that basis.[24]

Mr. Glossop alleges various errors in respondent's calculation of average monthly income; instead, he alleges his correct monthly disposable income to be $773 per month, rather than the $8,641 determined by the Office of Appeals. Assuming Mr. Glossop's calculation is correct, that amount was more than three

---

[24]See Johnson v. Commissioner, 136 T.C. at 486; see also Fargo v. Commissioner, 447 F.3d at 709-710.

**[\*16]** times his proposed monthly payment of $250. Additionally Mr. Glossop never documented the Britannia account, which at one point held $28,000--an amount more than twice his offer of $12,550. Again, the IRS may reject an offer-in-compromise because the taxpayer's ability to pay is greater than the amount he proposes to pay.[25] Thus, even if respondent's calculation is in error, that error is irrelevant, because even the corrected amount exceeds the amount Mr. Glossop offered.[26] Simply stated, respondent did not abuse his discretion because Mr. Glossop could pay more than he offered.

Noncompliance

No statutory or regulatory provision requires that taxpayers be afforded an unlimited opportunity to supplement the administrative record.[27] The statute requires only that a taxpayer be given a reasonable chance to be heard before the issuance of a notice of determination. Although Mr. Glossop argues he was not given sufficient time to correct his 2010 employment tax liability and provide

---

[25]See Johnson v. Commissioner, 136 T.C. at 486; see also Fargo v. Commissioner, 447 F.3d at 709-710.

[26]See Keller v. Commissioner, 568 F.3d at 718; see also Vanmali v. Commissioner, T.C. Memo. 2012-100; Atchison v. Commissioner, T.C. Memo. 2009-8.

[27]Roman v. Commissioner, T.C. Memo. 2004-20.

[*17] additional documents, two weeks passed after the hearing before Mr. Mazan prepared the notice of determination. Mr. Glossop did not provide a 2010 Form 1040 or Schedule C, nor did he provide a signed Form 433-A or signed Form 433-B. He never provided any documentation regarding the Britannia account, one reason his second offer was rejected.

When an Appeals officer gives a taxpayer an adequate timeframe to submit requested items, it is not an abuse of discretion to move ahead if the taxpayer fails to submit the requested items.[28] Mr. Glossop was given more than a year and a half to provide the documents that he wanted respondent to consider, and he was given additional time to provide the Britannia account information and to correct his unpaid 2010 employment tax liability. But he didn't do so.

With respect to Mr. Glossop's unpaid estimated tax payments and unpaid employment tax liabilities, "[r]eliance on a failure to pay current taxes in rejecting a collection alternative does not constitute an abuse of discretion."[29] Thus, it was not an abuse of discretion to reject the offer-in-compromise based on Mr.

---

[28]See Pough v. Commissioner, 135 T.C. 344, 351 (2010) (citing Shanley v. Commissioner, T.C. Memo. 2009-17).

[29]Giamelli v. Commissioner, 129 T.C. at 111-112 (citing Orum v. Commissioner, 123 T.C. 1, 4, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005)); see also Pough v. Commissioner, 135 T.C. at 351.

**[*18]** Glossop's failure to pay his estimated tax and the employment tax liabilities that accrued during the review of the offer.

The determination of the Office of Appeals must take into consideration: (1) the verification that the requirements of applicable law and administrative procedure have been met; (2) issues raised by the taxpayer; and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary.[30] The settlement officer properly based the determination on the factors required by section 6330(c)(3).

## Conclusion

We conclude that respondent did not abuse his discretion in rejecting the offer-in-compromise and sustaining the proposed levy. Thus, we will deny petitioner's motion for summary judgment and grant respondent's motion for summary judgment.

To reflect the foregoing,

An appropriate order and

decision will be entered.

---

[30]Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).